Jon **GETTMAN** and High Times Magazine, Petitioners,

v.

**DRUG ENFORCEMENT ADMINISTRATION,** Respondent.

No. 01–1182.

United States Court of Appeals, District of Columbia Circuit.

Argued March 19, 2002.

Decided May 24, 2002.

Michael Kennedy argued the cause and filed the briefs for petitioners.

Daniel Dormont, Senior Attorney, Drug Enforcement Administration, argued the cause for respondent. With him on the briefs were Michael Chertoff, Assistant Attorney General, U.S. Department of Justice, and Rose A. Briceno, Trial Attorney.

Before: SENTELLE, HENDERSON and TATEL, Circuit Judges.

Opinion for the Court filed by Circuit Judge SENTELLE.

SENTELLE, Circuit Judge:

Jon Gettman and High Times Magazine petition this Court for review of the March 20, 2001 decision of the Drug Enforcement Administration ("DEA") denying their petition to initiate rulemaking proceedings to reschedule marijuana under 21 U.S.C. § 811(a). *See Drug Enforcement Administration Notice of Denial of Petition,* 66 Fed.Reg. 20038 (April 18, 2001). The DEA contends we should dismiss the petition for review, arguing that neither Gettman nor High Times Magazine has standing to bring this petition. Because we agree with the DEA, we dismiss the petition.

## I. Background

The Controlled Substances Act, 21 U.S.C. § 801, *et seq.*, sets forth initial schedules of drugs and controlled substances in 21 U.S.C. § 812(c). However, Congress established procedures for adding or removing substances from the schedules (control or decontrol), or to transfer a drug or substance between schedules (reschedule). 21 U.S.C. § 811(a). This responsibility is assigned to the Attorney General in consultation with the Secretary of Health and Human Services ("HHS"). *Id.* § 811(b). The Attorney General has delegated his functions to the Administrator of the DEA. 28 C.F.R. § 0.100(b). Current schedules are published at 21 C.F.R. §§ 1308.11–1308.15.

There are three methods by which the DEA may initiate rulemaking proceedings to revise the schedules: (1) by the DEA's own motion; (2) at the request of HHS; (3) on the petition of any interested party. 21 U.S.C. § 811(a); 21 C.F.R. § 1308.43(a). Before initiating rulemaking proceedings, the DEA must request a scientific and medical evaluation from HHS and a recommendation. The statute requires the DEA and HHS to consider eight factors with respect to the drug or controlled substance. 21 U.S.C. § 811(b), (c). These factors are:

(1) Its actual or relative potential for abuse.

(2) Scientific evidence of its pharmacological effect, if known.

(3) The state of current scientific knowledge regarding the drug or other substance.

(4) Its history and current pattern of abuse.

(5) The scope, duration, and significance of abuse.

(6) What, if any, risk there is to the public health.

(7) Its psychic or physiological dependence liability.

(8) Whether the substance is an immediate precursor of a substance already controlled under this subchapter.

21 U.S.C. § 811(c). Although the recommendations of HHS are binding on the DEA as to scientific and medical considerations involved in the eight-factor test, the ultimate decision as to whether to initiate rulemaking proceedings to reschedule a controlled substance is made by the DEA. *See id.* § 811(a), (b).

Jon Gettman petitioned the DEA in 1995 to initiate rulemaking proceedings under 21 U.S.C. § 811(a) to reschedule various controlled substances, including marijuana. Subsequently High Times Magazine joined with him as a petitioner. In their petition to DEA, Gettman and High Times claimed that "there is no scientific evidence that [marijuana has] sufficient abuse potential to warrant schedule I or II status" under the Controlled Substances Act. In accordance with 21 U.S.C. § 811(b), the DEA forwarded the petition to HHS in 1997. In 2001, HHS recommended that marijuana remain in schedule I and the DEA in turn denied the petition. No action has been taken regarding the other drugs initially named by Gettman.

Gettman and High Times filed this petition for review of the DEA's refusal to initiate rulemaking proceedings to reschedule marijuana. On our own motion, we ordered supplemental briefing on standing, and specifically asked parties to address the issue of injury.

## II. Analysis

■ Article III, section 2, clause 1 of the United States Constitution limits the "judicial power" of the United States to the resolution of "cases" or "controversies." *Valley Forge Christian College v. Americans United for Separation of*

*Church & State, Inc.,* 454 U.S. 464, 471, 102 S.Ct. 752, 757–58, 70 L.Ed.2d 700 (1982); *see Chicago & Grand Trunk Ry. Co. v. Wellman,* 143 U.S. 339, 345, 12 S.Ct. 400, 402, 36 L.Ed. 176 (1892). In order to establish the existence of a case or controversy within the meaning of Article III, the party must meet certain constitutional minima. As relevant to this case, these include the requirement that the party must demonstrate that it has standing to bring the action. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992). "Those who do not possess Art. III standing may not litigate as suitors in the courts of the United States." *Valley Forge,* 454 U.S. at 475–76, 102 S.Ct. at 760. Petitioners seem to believe that their "commitment" to their cause and the alleged importance of their cause is enough to confer Article III standing. It is not. *Sierra Club v. Morton,* 405 U.S. 727, 739, 92 S.Ct. 1361, 1368, 31 L.Ed.2d 636 (1972). To satisfy the constitutional requirement of standing, a plaintiff or petitioner must, at an "irreducible constitutional minimum ... demonstrate that it has suffered a concrete and particularized injury that is: (1) actual or imminent, (2) caused by, or fairly traceable to an act that the litigant challenges in the instant litigation, and (3) redressable by the court." *Florida Audubon Soc'y v. Bentsen,* 94 F.3d 658, 663 (D.C.Cir.1996) (en banc) (internal quotation marks and citations omitted); *see Lujan,* 504 U.S. at 560–61, 112 S.Ct. at 2136–37. Neither Gettman nor High Times magazine meets this standard.

## A. Standing as an "Interested Party"

■ Petitioners contend that they have "automatic standing" to appeal the DEA's denial of their petition because 21 U.S.C. § 811(a)(2) permits "any interested party" to file a petition to initiate rulemaking proceedings. They suggest that this is enough—since they are the original petitioners before the DEA they should not be "held to heightened requirements for standing in pursuing judicial review of the DEA's order," and at no time during the administrative proceedings has the DEA claimed that they are not "interested part[ies]" under 21 U.S.C. § 811(a)(2). Petitioners misunderstand the law. Petitioners may be "interested part[ies]" under the statute, and therefore able to petition the agency, and yet not have Article III standing to bring this action in federal court. *See Fund Democracy, LLC v. SEC,* 278 F.3d 21, 27 (D.C.Cir.2002). "Participation in agency proceedings is alone insufficient to satisfy judicial standing requirements." *Id.* Mere interest as an advocacy group is not enough. The fact that Congress may have given all interested parties the right to petition the agency does not in turn "automatic[ally]" confer Article III standing when that right is deprived. *See id.* at 27–28. The Constitution requires a concrete and particularized injury. This is not a "heightened requirement," but rather the *bare minimum.* Thus, the grant of a procedural right alone cannot serve as the basis for Article III standing unless "the procedures in question are designed to protect some threatened concrete interest of [petitioners'] that is the ultimate basis of his standing." *Fund Democracy,* 278 F.3d at 28 (quoting *Lujan,* 504 U.S. at 573 n. 8, 112 S.Ct. at 2143 n. 8). The sufficiency of the sort of "interest" allowing an interested party to petition an agency at the will of Congress and the justicially protectable "interest" required for an injury to afford standing in the courts is fundamentally the difference between the political branches on the one hand and the Article III courts on the other. While it is perfectly proper, and indeed appropriate and even necessary, for the political branches to respond to the

abstract, ideological, philosophical or even idiosyncratic wishes and needs of citizens or, for that matter, persons at large, the courts are granted authority only for the purpose delineated in Article III, section 2, clause 1 of the Constitution and "may exercise power only 'in the last resort and as a necessity.'" *Allen v. Wright*, 468 U.S. 737, 752, 104 S.Ct. 3315, 3325, 82 L.Ed.2d 556 (1984) (quoting *Chicago & Grand Trunk Ry.*, 143 U.S. at 345, 12 S.Ct. at 402).

Therefore, contrary to petitioners' suggestion, it is not at all anomalous that Congress could permit them as "interested part[ies]" (assuming that they are) to participate in agency proceedings, and yet they be unable to seek review in the federal courts. "Because agencies are not constrained by Article III, they may permit persons to intervene in the agency proceedings who would not have standing to seek judicial review of the agency action." *Fund Democracy*, 278 F.3d at 27; *see Envirocare of Utah, Inc. v. NRC*, 194 F.3d 72, 74 (D.C.Cir.1999). In other words, the "criteria for establishing 'administrative standing' therefore may permissibly be less demanding than the criteria for 'judicial standing.'" *Envirocare*, 194 F.3d at 74. Thus, unless petitioners can demonstrate an injury in fact, both particularized and concrete, as required by the Constitution, they lack standing to appear before an Article III court.

### B. Injury In Fact

Petitioners bear the burden of establishing an injury in fact. *See Lujan*, 504 U.S. at 561, 112 S.Ct. at 2136–37. Neither petitioner meets this burden.

■ Petitioner Gettman argues that he will suffer "economic or competitive injury" from the DEA's decision not to initiate a rescheduling rulemaking for marijuana because he is "a public policy professional qualified to research, advise, invest, and profit from the development of medical marijuana." Gettman asserts that the schedule I classification of marijuana constrains his "ability to research economic development in this area and to sell his services as a policy analyst and/or professor." Thus, Gettman contends that the DEA's order has caused him injury "by narrowing the universe of customers of consulting services and also by stymieing his ability to legally conduct clinical and social research on marijuana, its effects and medical utility." Gettman's recitation of his interest and the injury to it fall far short of establishing a judicially protected interest or a judicially remediable injury. His desire to achieve vague objectives with relation to marijuana and his supposition that the DEA's failure to take the action he requested will retard the achievement of those goals does not cross the Article III threshold. "[A] mere 'interest in a problem,' no matter how longstanding the interest and no matter how qualified the organization is in evaluating the problem, is not sufficient by itself...." *Sierra Club v. Morton*, 405 U.S. at 739, 92 S.Ct. at 1368. Although the Supreme Court announced that standard in construing the Administrative Procedure Act, its applicability to standing analysis in general is obvious, and in any event this case, like *Sierra Club*, involves the construction of the APA.

Completing the inadequacy of Gettman's argument is the purely speculative nature of the harm and its remediability. There is no way to know whether anyone would beat a path to Gettman's door were the DEA to begin the reevaluation of marijuana. This sort of speculative claim falls far short of establishing the "core constitutional component that a plaintiff must allege." *Allen v. Wright*, 468 U.S. at 738, 104 S.Ct. at 3317. That is, it does not "allege per-

sonal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Id.* Not only is it sheer speculation and conjecture to claim that the DEA could have generated business of some sort for Gettman by commencing the rulemaking, the remedy of that supposed injury depends entirely upon "the independent action of some third party not before the court." *Simon v. E. Ky. Welfare Rights Org.,* 426 U.S. 26, 42, 96 S.Ct. 1917, 1926, 48 L.Ed.2d 450 (1976).

In *Simon, Allen v. Wright,* and numerous other cases, the courts have reiterated that such speculative claims dependent upon the actions of third parties do not create standing for the purposes of establishing a case or controversy under Article III. In short, Gettman has set forth a speculative injury dependent upon the conduct of third parties not before the court, at best reciting injury to his philosophical interest. We wish to make clear once again what the Supreme Court has long dictated:

> Recognition of standing in such circumstances would transform the federal courts into "no more than a vehicle for the vindication of the value interests of concerned bystanders" . . . Constitutional limits on the role of the federal courts precludes such a transformation.

*Allen v. Wright,* 468 U.S. at 756, 104 S.Ct. at 3327 (quoting *United States v. SCRAP,* 412 U.S. 669, 687, 93 S.Ct. 2405, 2415–16, 37 L.Ed.2d 254 (1973)).

 With respect to High Times Magazine, petitioners argue that it has associational standing to bring this action. That theory fails. "An association only has standing to bring suit on behalf of its *members* when its *members* would otherwise have standing to sue in their own right, the interests it seeks to protect are germane to the organization's purpose, and

neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Fund Democracy,* 278 F.3d at 25 (emphasis added); *see Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 181, 120 S.Ct. 693, 704, 145 L.Ed.2d 610 (2000). High Times Magazine stumbles on the first step. It does not have any *members.* "In determining whether an organization that has no members in the traditional sense may nonetheless assert associational standing, the question is whether the organization is the functional equivalent of a traditional membership organization." *Fund Democracy,* 278 F.3d at 25 (citing *Hunt v. Washington State Apple Adver. Comm'n,* 432 U.S. 333, 342–45, 97 S.Ct. 2434, 2440–42, 53 L.Ed.2d 383 (1977); *American Legal Found. v. FCC,* 808 F.2d 84, 89–90 (D.C.Cir.1987)). High Times claims it is "committed to the decriminalization of marijuana" and that many of its "readers and subscribers are dependent on marijuana to treat medical illnesses." But readership is not the same as membership. As in *American Legal Foundation* and our more recent decision in *Fund Democracy,* petitioners have not shown that its "readers and subscribers" played any role in selecting its leadership, guiding its activities, or financing those activities. *See Fund Democracy,* 278 F.3d at 26. Therefore High Times Magazine has no basis for asserting associational standing, no matter how "committed to the decriminalization of marijuana" it may be.

Petitioners' off-hand assertion that the magazine itself has suffered direct injury insofar as the schedule I status of marijuana creates a "chilling effect" on its First Amendment rights to investigate and report on the "medical and cultural realities of marijuana" is unexplained and probably unexplainable. Granted, "[t]he Constitution gives significant protection from over-

broad laws that chill speech within the First Amendment's vast and privileged sphere." *Ashcroft v. Free Speech Coalition,* — U.S. —, —, 122 S.Ct. 1389, 1399, — L.Ed.2d — (2002). However, the bald recitation that the failure to commence a rulemaking somehow chills speech is not only insufficient, it is at least a non sequitur and close to an absurdity. Moreover, nothing about the DEA's decision involves speech or expression as such. *Cf. United States v. O'Brien,* 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968). High Times has shown no way in which it or anyone else is deterred from writing or speaking in any way by the lack of the rulemaking.

Finally, petitioners contend that this Court and others have permitted the filing of petitions for review of DEA orders by parties who were "similarly situated to Jon Gettman and High Times Magazine," and for that reason, their petition should be heard. *See NORML v. DEA,* 559 F.2d 735 (D.C.Cir.1977); *Grinspoon v. DEA,* 828 F.2d 881 (1st Cir.1987); *Alliance for Cannabis Therapeutics v. DEA,* 930 F.2d 936 (D.C.Cir.1991) & 15 F.3d 1131 (D.C.Cir. 1994). Whether the petitioners in these cases were "similarly situated" to Gettman and High Times is an uncertainty at best as the National Organization for Reform of Marijuana Laws ("NORML") and the Alliance for Cannabis Therapeutics may have members, whereas High Times does not. However, even if petitioners were to establish that the prior cases were parallel, they are not controlling. In none of these cases did the Court hold that the parties before it had established constitutional standing. Where a court has simply assumed standing, that assumption creates no precedent upon which future litigants may rely. This is well established. In *Coalition for Preservation of Hispanic Broadcasting v. FCC,*

893 F.2d 1349 (D.C.Cir.1990), we considered a claim that our decision in *Shurberg Broadcasting v. FCC,* 876 F.2d 902 (D.C.Cir.1989), compelled the finding of standing in the case before us. We declared that "[t]he various opinions in *Shurberg Broadcasting v. FCC,* 876 F.2d 902 (D.C.Cir.1989), assumed standing and did not assess the seriousness of Shurberg's quest," and went on to hold that "cases in which jurisdiction is assumed are not authority for the existence of jurisdiction." *Hispanic Broad.,* 893 F.2d at 1365 n. 1 (citing *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 119, 104 S.Ct. 900, 918, 79 L.Ed.2d 67 (1984)). As we are only "bound by holdings," *cf. Alexander v. Sandoval,* 532 U.S. 275, 282, 121 S.Ct. 1511, 1517, 149 L.Ed.2d 517 (2001), a case where the standing issue was not confronted cannot be taken as "authority" for the existence of jurisdiction here. Although a court may raise standing *sua sponte* (as we have done here), our failure to do so in the past does not preclude us from doing so now. Thus, these cases provide no basis for finding petitioners have suffered an injury in fact, much less that they have standing.

### III. Conclusion

Because petitioners Gettman and High Times Magazine lack standing to bring this petition for review of the DEA's decision, we dismiss the petition for review. It is

*So ordered.*