**LPA INC., et al., Plaintiffs,**

v.

**Elaine L. CHAO, Secretary, United States Department of Labor,[1] Defendant.**

**No. Civ.A. 00–1505(PLF).**

United States District Court, District of Columbia.

July 24, 2002.

---

1. Elaine L. Chao was confirmed as Secretary of Labor by the Senate on January 29, 2001. She is hereby substituted as the named defendant, as this action is brought against the Secretary in her official capacity. *See* Rule 25(d), Fed.R.Civ.P.

Andrew Michael Kramer, Daniel H. Bromberg, Jones, Day, Reavis & Pogue, Washington, DC, for LPA, Inc., Society for Human Resource Management, Chamber of Commerce of the United States, Counterpulsation, Inc., Danneman's Auto Service, Inc, Plaintiffs.

Sandra Marguerite Schraibman, Elizabeth Jane Shapiro, U.S. Department of Justice, Washington, DC, for Alexis M. Herman, for Defendants.

*MEMORANDUM OPINION*

PAUL L. FRIEDMAN, District Judge.

This matter is before the Court on defendant's motion to dismiss. Plaintiffs

filed their complaint on June 26, 2000 to challenge a rule issued by the Secretary of Labor on June 13, 2000. The rule, entitled Birth and Adoption Unemployment Compensation, is the Secretary's interpretation of the federal unemployment compensation statutes which are administered at the state level. Under this rule, states administering federal unemployment compensation programs may enact legislation to provide employees with partial wage replacement when they take approved leave following the birth or adoption of a child. Defendant argues that because no state has yet enacted legislation pursuant to this rule, plaintiffs lack standing to challenge the rule issued by the Secretary, and the controversy is not ripe for adjudication. Upon consideration of the defendant's motion, plaintiffs' opposition, defendant's reply, and the arguments presented at the motions hearing, the Court concludes that plaintiffs lack standing to challenge the rule and it therefore grants defendant's motion.[2]

## I. BACKGROUND

On June 13, 2000, the Secretary of Labor issued a final rule interpreting current federal unemployment compensation ("UC") statutes. *See* Birth and Adoption Unemployment Compensation ("BAA–UC"), 65 Fed.Reg. 37,210–01 (June 13, 2000). According to the rule, states may enact legislation using UC funds "to provide partial wage replacement, on a voluntary, experimental basis, to parents who take approved leave or who otherwise leave employment following the birth or placement for adoption of a child." *Id.* at 37,210.

The UC system operates through cooperation between the federal and state governments to provide employees with UC

benefits. *See* BAA–UC, 65 Fed.Reg. at 37,210. States collect UC taxes from employers to make UC payments to employees, and the federal government collects a payroll tax that can be used as tax credits for employers in states with federally certified programs. *See id.; see also* Memorandum of Points and Authority in Support of Defendant's Motion to Dismiss ("Motion to Dismiss") at 6. State programs are certified pursuant to the Department of Labor's oversight over the federal-state UC programs. *See* BAA–UC, 65 Fed.Reg. at 37,210. If a state programs meets certain federally mandated criteria, the Secretary of Labor can certify the program and employers may then receive tax credits against the federal unemployment tax they must pay. *See id.*

Under the authority to interpret federal UC statutes, the Department of Labor has required that employees receiving UC benefits be "able and available for work," although this is not formally required by federal law. *See* BAA–UC, 65 Fed.Reg. at 37,210–11. The "able and available for work" requirement has been interpreted flexibly to extend UC benefits to areas such as employee training, illness, jury duty and temporary layoffs. *See id.* Within the framework of the federal UC statutes, the Secretary of Labor interpreted federal UC laws to allow states to use UC funds to provide parents on birth or adoption leave with partial wage replacement.

BAA–UC is voluntary and requires that states must enact implementing legislation before these funds may be used to provide benefits to parents. *See* BAA–UC, 65 Fed.Reg. at 37,210. Although the Department of Labor has provided model legislation, a state legislature has the discretion

**2.** Because the Court grants the motion to dismiss on the basis of plaintiffs' lack of standing, it need not decide whether this action is ripe for adjudication.

to decide on whether and how such a program should be administered in its state. *See id.* at 37,210, 37,225–28. States may consider a number of criteria when implementing BAA–UC programs, including employee eligibility for benefits under the program, applicable waiting periods, the duration parents may receive benefits, and earning requirements. *See id.* at 37,-225–28. Significantly, states may fund the program in a variety of ways, ranging from increasing employer contribution rates to developing funding entirely outside the UC program. *See id.* at 37,215–17.

Plaintiffs filed their complaint on June 26, 2000, seeking both a declaration that the BAA–UC is invalid and a permanent injunction directing the Department of Labor to withdraw the regulation and final rule. *See* Complaint at 19–25. Should any state enact a law under the BAA–UC, plaintiffs request a preliminary injunction to prevent the legislation from taking effect. *See id.* at 24–25. The complaint alleges that the BAA–UC violates substantive UC requirements and the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.*, and that it arbitrarily departs from long-standing agency policy. *See id.* at 19–21. Plaintiffs further allege defendant's noncompliance with numerous procedural requirements that should have been followed when developing the BAA–UC. *See id.* at 21–24.

## II. STANDING

To meet the Article III requirements of standing, a plaintiff must show: (1) that it has suffered an injury in fact, the invasion of a legally protected interest; (2) that the injury is fairly traceable to the defendant's conduct (a causal connection);

and (3) that a favorable decision on the merits likely will redress the injury. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *Gettman v. DEA,* 290 F.3d 430, 433 (D.C.Cir.2002). The alleged injury in fact must be concrete and particularized and actual or imminent, not conjectural, hypothetical or speculative. *See Lujan v. Defenders of Wildlife,* 504 U.S. at 560–61, 112 S.Ct. 2130; *Sierra Club v. EPA,* 292 F.3d 895, 898 (D.C.Cir.2002); *American Petroleum Institute v. EPA,* 216 F.3d 50, 63 (D.C.Cir.2000). If plaintiff cannot meet all three prongs of this test, then the Court must dismiss the suit for lack of standing.

Defendant argues that plaintiffs lack standing because no state has passed or is about to pass BAA–UC legislation and that plaintiffs therefore are unable to demonstrate that any actual or imminent injury has or will result from the Secretary's interpretation. Defendant maintains that plaintiffs' prediction that at least one state will enact a law under the BAA–UC sometime within the next year is too speculative to satisfy the injury in fact requirement.[3] Defendant also contends that the injury requirement cannot be met by plaintiffs' claim of increased lobbying expenses incurred to prevent passage of BAA–UC statutes by state legislatures. Finally, defendant argues that plaintiffs do not have standing based on the procedural violations allegedly committed by the Secretary of Labor in announcing the BAA–UC.

Plaintiffs first respond that the defendant too strictly construes the imminence requirement under the injury in fact prong. They also assert that they have shown through an expert's analysis that

**3.** The briefing in this matter was completed on October 12, 2000. In the 21 months that have elapsed since then, plaintiffs have not advised the Court that any state has enacted such legislation.

BAA–UC legislation will be enacted in at least one state within the year and that the threatened injury therefore is imminent. *But see supra* n. 3. Second, plaintiffs contend that increased lobbying expense are injuries that are sufficient to confer Article III standing because these expenses have not been voluntarily incurred and would not have been required but for the Secretary's action. Finally, they maintain that they have standing based on the Secretary's alleged procedural violations. The Court rejects plaintiffs' arguments and concludes that the requirements for Article III standing have not been met in this case because for each of plaintiffs' three theories, they have failed to demonstrate that they have suffered or imminently will suffer any injury in fact.[4]

### A. Injury in Fact: Adverse Consequences of BAA– UC Legislation

Plaintiffs lack standing to sue because they have failed to show that any injury resulting from BAA–UC legislation either has occurred or is imminent. For a plaintiff to have standing, the injury alleged must be actual or imminent, not conjectural or speculative; such injury must, at the very least, be "certainly impending." *Lujan v. Defenders of Wildlife,* 504 U.S. at 565 n. 2, 112 S.Ct. 2130. When a plaintiff seeks to avoid injuries that are merely speculative or to require a court to infer what events might transpire to cause plaintiff harm in the future, the injury in fact requirement is not met. *See Alamo v. Clay,* 137 F.3d 1366, 1370 (D.C.Cir.1998) (injury in the form of stigma resulting from the denial of parole was at best a speculative injury); *J. Roderick MacArthur Foundation v. FBI,* 102 F.3d 600, 606

(D.C.Cir.1996) (harm must be "certainly impending"; alleging that plaintiff might suffer an injury at some unknown time is too speculative to warrant standing); *Florida Audubon Society v. Bentsen,* 94 F.3d 658, 667–68 (D.C.Cir.1996) (potential harm to environment caused by tax increase to stimulate corn production too speculative to confer standing). Plaintiffs' contention that they have standing because there is a substantial likelihood of a state enacting BAA–UC legislation is not a showing that injury is imminent, just (at best) possible or likely. Under the standing doctrine, more is required; the injury must be impending before the injury in fact requirement is met.

It is undisputed that no state has enacted BAA–UC legislation and that the adverse effects plaintiffs contend that BAA–UC legislation might cause—increased taxes, increased absenteeism and decreased productivity—therefore have not occurred. Plaintiffs rely on an expert's analysis concluding that there is a "substantial likelihood that at least one state will enact BAA–UC legislation in the next year." Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendant's Motion to Dismiss the Complaint, Exhibit 1, Declaration of Stephen Woods ("Woods Decl.") ¶ 9. The Court must conclude, however, that the injury plaintiffs seek to avoid is too speculative to satisfy the standing requirements.

Even though Mr. Woods is purportedly an expert, his opinion that BAA–UC legislation will be passed in some state within a year is not only pure speculation—and therefore insufficient to meet plaintiffs' burden under the injury in fact prong, *see Florida Audubon Society v. Bentsen,* 94 F.3d at 667–68—it has proved to be wrong.

---

4. Because plaintiffs have failed to demonstrate injury in fact under each of their three theories of standing, the Court does not need to consider the other two prongs of the standing test—causal connection and redressability.

Apparently, no state has passed such legislation yet despite the passage of 22 months since Mr. Woods signed his declaration. *See also supra* n. 3. Moreover, the harms that may be caused by BAA–UC legislation—if and when such legislation is passed—will depend largely on the specific provisions included in the statute passed by the particular state. Because the BAA–UC allows each state considerable latitude to determine how to enact such programs and what to include, the substance of these statutes could differ significantly. The Court therefore would have to speculate that whenever some state enacts BAA–UC legislation, the statute it passes will contain the types of provisions that will create the kind of harms plaintiffs seek to avoid. Because plaintiffs ask the Court to engage in a series of inferences about the harms they fear will occur, the Court must conclude that the injury alleged simply is too speculative to satisfy the Article III standing requirements. *See Florida Audubon Society v. Bentsen,* 94 F.3d at 665–68.[5]

### B. Injury in Fact: Increased Lobbying Expenses

■ The Court also must conclude that plaintiffs cannot show injury in fact by pointing to their increased lobbying expenses. They claim that they have already suffered an injury because they have expended considerable sums of money opposing the passage of this legislation in individual states and that these expenses were not voluntarily incurred but were forced upon plaintiffs by the Secretary's actions. Contrary to plaintiffs' contention, however, it is settled that a plaintiff cannot show injury simply by pointing to an expenditure of resources such as increased litigation costs or lobbying expenses. *See National Treasury Employees Union v. United States,* 101 F.3d 1423, 1430 (D.C.Cir.1996); *National Taxpayers Union, Inc. v. United States,* 68 F.3d 1428, 1434 (D.C.Cir.1995); *Fair Employment Council of Greater Washington, Inc. v. BMC Marketing Corp.,* 28 F.3d 1268, 1276 (D.C.Cir.1994).

Plaintiffs also contend that the effect of BAA–UC hinders their organizational and lobbying goals. This alleged harm also is insufficient to meet the injury requirement, as this injury is "the type of abstract concern that does not impart standing." *National Taxpayers Union, Inc. v. United States,* 68 F.3d at 1433. Accordingly, plaintiffs cannot meet the standing requirement of injury in fact by asserting, or even by demonstrating, that they have incurred increased lobbying costs from opposing BAA–UC legislation.

### C. Injury in Fact: Procedural Violations

■ Although a plaintiff in some situations can satisfy Article III standing requirements by alleging that it has suffered an injury based on a procedural violation, these injuries by themselves are insufficient to demonstrate injury in fact. *See Lujan v. Defenders of Wildlife,* 504 U.S. at 572–73, 112 S.Ct. 2130; *see also Gettman v. DEA,* 290 F.3d at 433; *National Treasury Employees Union v. United States,* 101 F.3d 1423, 1428–29 (D.C.Cir.1996); *Florida Audubon Society v. Bentsen,* 94 F.3d at 666–68. A plaintiff must show that there is a " 'particularized injury' resulting from the government's substantive action that breached the procedural requirement." *Florida Audubon Society v. Bentsen,* 94 F.3d at 668–69; *see also Gettman*

---

**5.** The Court also doubts Mr. Woods' expertise and the bases of his opinions. The few factors on which he relies (see ¶ 9a–d, Woods Decl.) are thin reeds indeed on which to base his entire opinion.

*v. DEA,* 290 F.3d at 433; *Fund Democracy, LLC v. SEC,* 278 F.3d 21, 28 (D.C.Cir. 2002); *Animal Legal Defense Fund v. Glickman,* 204 F.3d 229, 236 (D.C.Cir. 2000). Although the requirements of redressability and imminence are less stringent in procedural standing cases, the plaintiff must still meet all three basic requirements of Article III standing in such cases. *See Lujan v. Defenders of Wildlife,* 504 U.S. at 572 n. 2, 112 S.Ct. 2130; *Florida Audubon Society v. Bentsen,* 94 F.3d at 668–69. Thus, plaintiff must still show that the injury is particularized and that it is concrete and not merely speculative. *See Florida Audubon Society v. Bentsen,* 94 F.3d at 668; *see also Gettman v. DEA,* 290 F.3d at 433; *Fund Democracy, LLC v. SEC,* 278 F.3d at 28; *Animal Legal Defense Fund v. Glickman,* 204 F.3d at 236.

■ Plaintiffs contend that the Secretary committed certain procedural violations when formulating the BAA–UC and that the BAA–UC allows states to enact family leave legislation that they allege will injure them; these procedural violations, they argue, give them standing to contest the rule. The Court does not agree. Even if plaintiffs are correct that procedural violations did occur, they still must show that the underlying injury—the potentially adverse effects of BAA–UC legislation—is more than mere speculation. As the Court already has determined, plaintiffs cannot show injury in fact because the *injury* they fear is based on the speculation that a state will pass such a law, that it will pass such a law soon, and that this legislation will contain the types of provisions that will harm plaintiffs. No state has yet passed such legislation and the passage of such a law does not appear imminent.

An Order and Judgment consistent with this Memorandum Opinion will be issued this same day.

SO ORDERED.

*ORDER AND JUDGMENT*

The Court has before it defendant's motion to dismiss. Upon consideration of defendant's motion, plaintiffs' opposition, defendant's reply, and the arguments raised at the November 28, 2000 motions hearing, and for the reasons stated in the Memorandum Opinion issued this same day, it is hereby

ORDERED that defendant's motion to dismiss is GRANTED; it is

FURTHER ORDERED that JUDGMENT is entered for defendant; it is

FURTHER ORDERED that this Order and Judgment shall constitute a FINAL JUDGMENT in this case; and it is

FURTHER ORDERED that this case is dismissed with prejudice from the docket of this Court. This is a final appealable order. *See* Rule 4(a), Fed.R.App.P.

SO ORDERED.