KAREN LeCRAFT HENDERSON, Circuit Judge,
dissenting:
Over a decade ago, our court was compelled to remind all petitioners of first principles, namely, they must assure us that they meet Article Ill’s case or controversy requirement if their standing is not “self-evident” from the record. Sierra Club v. EPA, 292 F.3d 895, 900 (D.C.Cir. 2002). We subsequently transformed the holding into D.C. Circuit Rule 28(a)(7) to tell the litigating world we really meant *453 what we said in Sierra Club. Since then, our precedent and our Rule seem to have been honored more in the breach than in compliance. We have issued pre-argument orders alerting the parties to be prepared to address standing at oral argument because of our uncertainty regarding standing based on the briefing. See, e.g., Order, Cherry v. FCC, No. 10-1151 (Feb. 23, 2012). We have allowed a second— late — opportunity to establish standing at the reply brief stage. See Exxon Mobil Corp. v. FERC, 571 F.3d 1208, 1219 (D.C.Cir.2009). We have even asked for post-argument briefs based on the petitioner’s failure theretofore to establish standing. See Pub. Citizen, Inc. v. Nat’l Highway Traffic Safety Admin., 489 F.3d 1279, 1297 (D.C.Cir.2007); see also id. at 1297-99 (Sentelle, J., dissenting). Some of us have been more forgiving than others. See, e.g., Am. Library Ass’n v. FCC, 401 F.3d 489, 492 (D.C.Cir.2005) (Edwards, J.) (articulating Sierra Club exception if petitioners “reasonably [but mistakenly] believed their standing [was] self-evident”); Communities Against Runway Expansion, Inc. v. FAA, 355 F.3d 678, 685 (D.C.Cir.2004) (Edwards, J.) (excusing belated submissions attached to reply brief because they made standing “patently obvious”); KERM, Inc. v. FCC, 353 F.3d 57, 60-61 (D.C.Cir.2004) (noting petitioner’s belated assertion of standing but nonetheless analyzing standing arguments) (Edwards, J.). Perhaps it is too late to blow the whistle but I do not share the solicitude my colleagues show the petitioners— no novices on their merits claim[1] — here, especially in view of the fact that their standing theory for the lone petitioner with standing is, post-argument, brand new.
Petitioners Americans for Safe Access (ASA), Coalition for Rescheduling Cannabis (CRC), Patients Out of Time (POT), Kathy Jordan, Michael Krawitz, Richard Steeb and William Britt (petitioners) petition for review of the decision of the Drug Enforcement Administration (DEA or Agency), Denial of Petition To Initiate Proceedings To Reschedule Marijuana, 76 Fed.Reg. 40,552 (Jul. 8, 2011), denying their petition to initiate rulemaking proceedings to reschedule marijuana as a Schedule I substance under the Controlled Substances Act (CSA), 21 U.S.C. § 801 et seq. The majority determines — based on his post-argument submission — that Krawitz has standing and thus proceeds to the merits. I believe the post-argument submission should not have been allowed. Once allowed, it should not have been considered because it asserts a new theory of standing. The remaining petitioners also lack standing and therefore the petition for review should have been dismissed.
I.
To press their claim, the petitioners must establish that at least one of them has standing. Rumsfeld v. Forum for Academic & Inst. Rights, Inc., 547 U.S. 47, 52 n. 2, 126 S.Ct. 1297, 164 L.Ed.2d 156 (2006). Article III standing has three elements: “(1) injury-in-fact, (2) causation, and (3) redressability.” Sierra Club, 292 F.3d at 898. Reviewing administrative action, we require that the petitioner “either identify in that record evidence sufficient to support its standing to seek review or, if there is none because standing was not an issue before the agency, submit additional evidence to the court of appeals.” Id. at *454 899. Three of the seven petitioners— ASA, CRC and POT — are organizations. The remaining petitioners — Jordan, Krawitz, Steeb and Britt — are members of ASA (ASA Members). Neither CRC nor POT has attempted to establish its standing. The remaining petitioners assert three theories of standing: ASA’s standing as an association, the individual standing of the four ASA Members and ASA’s standing representing its members. I begin with Krawitz’s standing as he is the one whose standing the majority affirms.
II.

A. Krawitz’s Standing

In their opening brief, the petitioners did not distinguish Krawitz from the other ASA Members. With that brief, the petitioners submitted an affidavit executed by Krawitz. Krawitz declared therein that he was a disabled veteran and that he used marijuana to alleviate his pain. Krawitz explained that he received medical benefits from the United States Department of Veterans Affairs (VA) but that
[bjecause of my medical cannabis use, / am currently being denied my prescription pain treatment by the VA based upon their illegal drug policy that routinely, administratively, denies pain treatment as punishment for using cannabis by veterans that do not live in a state with legal medical cannabis, based on VA’s policy regarding medical cannabis, which, among other things, prohibits VA physicians from discussing therapeutic uses of cannabis with me. A true and correct copy of that policy is attached hereto as Exhibit 1. Although the bulk of my medical care still occurs at VA hospital I am now seeing an outside M.D. for my pain treatment under the VA’s fee basis program.
Krawitz Aff. ¶ 4 (bracketed text omitted) (emphasis added). To his affidavit, Krawitz attached a document entitled “CONTRACT FOR CONTROLLED SUBSTANCE PRESCRIPTION.” Krawitz Aff. Ex. 1 at 1. The document is confusing at best, and, at worst, makes it appear as if the VA itself could be providing Krawitz with marijuana. See, e.g., Krawitz Aff. Ex. 1 at 1 (“I will not request or accept controlled substance medication from any other physician or individual while I am receiving such medication from my physician at the Salem VAMC Clinic”). The petitioners, unhelpfully, provided no explanation of the contract in either their opening or their reply briefs.
Krawitz’s affidavit and exhibit failed to establish standing. His affidavit boiled down to the averment that he was injured because the VA had a drug policy that “denies pain treatment as punishment for using cannabis by veterans that do not live in a state with legal medical cannabis,” Krawitz Aff. ¶4 (emphasis added). But Krawitz challenges federal, not state law, and he has provided no evidence or argument that rescheduling marijuana under the CSA will change the way any state regulates marijuana. Indeed, state marijuana legislation in recent years has distinctly diverged from federal law. See, e.g., Gettman v. DEA, 290 F.3d 430, 435 (D.C.Cir.2002) (“[Speculative claims dependent upon the actions of third parties do not create standing.”).
Notwithstanding the failure of the petitioners’ showing regarding standing — specifically, Krawitz’s affidavit with attachment — we issued a post-argument order, giving them yet another opportunity[2] to *455 “clarify and amplify the assertions made in paragraph 4 of the Affidavit of Michael Krawitz regarding his individual standing.” I dissented from the order because our precedent unequivocally directs the method by which a petitioner must establish standing, a method the petitioners ignored. In 2002, we explained:
Henceforth, therefore, a petitioner whose standing is not self-evident should establish its standing by the submission of its arguments and any affidavits or other evidence appurtenant thereto at the first appropriate point in the review proceeding. In some cases that will be in response to a motion to dismiss for want of standing; in cases in which no such motion has been made, it will be with the petitioner’s opening brief — and not, as in this case, in reply to the brief of the respondent agency. In either procedural context the petitioner may carry its burden of production by citing any record evidence relevant to its claim of standing and, if necessary, appending to its filing additional affidavits or other evidence sufficient to support its claim. In its opening brief, the petitioner should also include in the “Jurisdictional Statement” a concise recitation of the basis upon which it claims standing.
.... [A]ll too often the petitioner does not submit evidence of those facts with its opening brief and the respondent is therefore left to flail at the unknown in an attempt to prove the negative, or the court raises its own question about the petitioner’s standing and ends up having to direct the parties to file supplemental briefs in order to ensure that the issue is joined in a fair and thorough adversarial process.
Sierra Club, 292 F.3d at 900-01 (emphasis added). We cautioned that “[ajbsent good cause shown ... a litigant should not expect the court” to depart from the above procedure. Id. at 900. Sierra Club does not make the petitioner’s showing optional — it instead constitutes binding Circuit law. As noted earlier, we codified Sierra Club in our Circuit Rules as follows:
In cases involving direct review in this court of administrative actions, the brief of the appellant or petitioner must set forth the basis for the claim of standing. This section, entitled “Standing,” must follow the summary of argument and immediately precede the argument. When the appellant’s or petitioner’s standing is not apparent from the administrative record, the brief must include arguments and evidence establishing the claim of standing. See Sierra Club v. EPA, 292 F.3d 895, 900-01 (D.C.Cir.2002). If the evidence is lengthy, and not contained in the administrative record, it may be presented in a separate addendum to the brief.
D.C.Cir. R. 28(a)(7); see also Int’l Bhd. of Teamsters v. Transp. Sec. Admin., 429 F.3d 1130, 1134-35 & n. 2 (D.C.Cir.2005) (dismissing petition for review because petitioner “first addressed its standing at oral argument, in response to questioning by the court”); Exxon Mobil, 571 F.3d at 1220 (declining to consider standing theory first articulated at oral argument). The petitioners had made no effort to show “good cause”[3] for their initial failure to establish standing. And, this being so, I *456 opposed giving them yet another opportunity to establish standing.
In response to the order, the petitioners filed a supplemental brief with a new Krawitz affidavit, featuring a new theory of standing. He avers, for the first time, that he spends one or two months per year in Oregon, where he obtains marijuana for medical use. To obtain medicinal marijuana in Oregon, a person must apply for a registration card, which requires him to submit annually “[vjalid, written documentation from the person’s attending physician stating that the person has been diagnosed with a debilitating medical condition and that the medical use of marijuana may mitigate the symptoms or effects of the person’s debilitating medical condition.” See Or. Rev. Stat § 475.309(2), (7)(C)(i). Krawitz complains that the VA has a policy — VHA Directive 2011-004 — prohibiting its physicians from providing such documentation, thus forcing him to pay $140.00 per year to consult an Oregon physician who can so provide.
Unlike his original affidavit — in which Krawitz declared that the VA denied him pain treatment — Krawitz’s new affidavit states that the VA is not denying him treatment for pain based on his marijuana use. Moreover, VHA Directive 2011-004 makes plain that the VA does not have a policy of denying pain treatment to veterans who are using marijuana, instead declaring: “VHA policy does not administratively prohibit Veterans who participate in State marijuana programs from also participating in VHA ... pain control programs ... [Decisions to modify treatment plans in those situations need to be made by individual providers in partnership with their patients.” VHA Directive 2011-004 (Jan. 31, 2011), available at http://www.va. gov/VHAPUBLICATION S/View Publication.asp?pub — ID=2362.
In other words, Krawitz asserts a new injury-in-fact — a $140.00 per year pocketbook injury — that is nowhere to be found in even the most generous reading of his original affidavit. As we have earlier held, however, “we are aware of no authority which permits a party to assert an entirely new injury (and thus, an entirely new theory of standing) in its reply brief.” Coal, for Responsible Regulation, Inc. v. EPA, 684 F.3d 102, 147 (D.C.Cir.2012) (per curiam) (emphasis added). And plainly — until today — we have never permitted a petitioner to assert an entirely new injury and theory of standing in a post-argument submission.[4]
Because my colleagues found that Krawitz has standing, they proceeded directly to the merits. Rumsfeld, 547 U.S. at 52 n. 2, 126 S.Ct. 1297 (“[T]he presence of one party with standing is sufficient to satisfy Article Ill’s case-or-controversy requirement.”). Because I believe Krawitz lacks standing, I must consider the other petitioners’ standing.

*457
B. Other Petitioners’ Standing

ASA’s Organizational Standing

In their opening brief, the petitioners asserted that ASA has standing as an organization because it must expend “significant resources combatting the DEA’s positions respecting marijuana’s medical use and abuse potential, which would be redressed by a favorable decision.” Pet’rs’ Opening Br. 6. In their reply brief, they argue “ASA has been unable to employ a full-time California Director to interface with government agencies in California and those of other medical marijuana states to implement state law, in particular, the regulation of medical marijuana dispensaries.” Pet’rs’ Reply Br. 3 (citing Sherer Supp. Aff. ¶ 2).
An organization does not have standing based on a mere “ ‘setback to [its] abstract social interests.’ ” Nat’l Ass’n of Home Builders v. EPA, 667 F.3d 6, 11 (D.C.Cir. 2011) (quoting Nat’l Taxpayers Union, Inc. v. United States, 68 F.3d 1428, 1433 (D.C.Cir.1995)). An association’s “self-serving observation that it has expended resources to educate its members and others regarding [a challenged statutory provision] does not present an injury in fact,” particularly if “[t]here is no evidence that [the challenged provision] has subjected [the association] to operational costs beyond those normally expended to review, challenge, and educate the public.” Nat’l Taxpayers Union, 68 F.3d at 1434. Nor is standing found “when the only ‘injury’ arises from the effect of the regulations on the organizations’ lobbying activities.” Ctr. for Law & Educ. v. Dep’t of Educ., 396 F.3d 1152, 1161 (D.C.Cir.2005).
The petitioners support ASA’s organizational standing by relying on Havens Realty Corp. v. Coleman, 455 U.S. 363, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982). In Havens, a nonprofit corporation sued the owner of an apartment complex for damages under the Fair Housing Act because “the [discriminatory] practices of [the apartment complex] had frustrated the organization’s counseling and referral services, with a consequent drain on resources.” Id. at 369, 102 S.Ct. 1114. The Supreme Court upheld the nonprofit’s standing because the “practices have perceptibly impaired [its] ability to provide counseling and referral services for low- and moderate-income homeseekers.... Such concrete and demonstrable injury to the organization’s activities — with the consequent drain on the organization’s resources — constitutes far more than simply a setback to the organization’s abstract social interests.” Id. at 379, 102 S.Ct. 1114.
We considered a similar standing issue in Spann v. Colonial Vill., Inc., 899 F.2d 24 (D.C.Cir.1990), where we found two organizations had standing to assert a claim for injunctive relief and damages under the Fair Housing Act because the discriminatory conduct “required [plaintiffs] to devote more time, effort, and money to endeavors designed to educate not only black home buyers and renters, but the D.C. area real estate industry and the public that racial preference in housing is indeed illegal.” Id. at 27; see also id. at 28-29 (“increased education and counseling could plausibly required”). We emphasized “the difference between this suit and one presenting only abstract concerns or complaints about government policy;” specifically, the plaintiffs “do not seek to compel government action, [or] to involve the courts in a matter that could be resolved in the political branches” but rather “are private actors suing other private actors, traditional grist for the judicial mill.” Id. at 30.
Unlike Havens and Spann, this case does not involve “private actors suing oth *458 er private actors, traditional grist for the judicial mill.” Id. Nor does it involve a suit for damages under a federal statute (like the Fair Housing Act) that creates a cause of action. Instead, it serves “to compel government action, [and] to involve the courts in a matter that could be resolved in the political branches.”[5] Id. Moreover, ASA’s asserted injury — that it must spend money to “educate the public about the true benefits of marijuana” and to “lobby[ ] local, state and federal governments,” Sherer Aff. ¶¶ 8, 12 — is essentially an argument that ASA cannot allocate issue advocacy expenses in the way it would prefer, which is insufficient to establish standing. See Ctr. for Law & Educ., 396 F.3d at 1162 (“The only ‘service’ impaired is pure issue-advocacy — the very type of activity distinguished by Havens.”). Nor have the petitioners explained how ASA would be able to avoid these expenditures if marijuana were rescheduled. For example, ASA would still need to meet the substantial scientific evidence — identified by DEA — that rejects its position regarding marijuana’s medical efficacy. Similarly, ASA would need to counter statements made by entities other than DEA (including the very state and local governments they are lobbying) that oppose legalization of marijuana for medical use. See Nat’l Taxpayers Union, 68 F.3d at 1434 (“There is no evidence that [the challenged statutory provision] has subjected [the association] to operational costs beyond those normally expended to review, challenge, and educate the public”).
The closest the petitioners come to establishing an injury to ASA as an organization is their statement that “[s]ince 2006, due to expenditures made by ASA to offset the false statements made by the [DEA and HHS] that marijuana has no medical use and is extremely dangerous, ASA has been unable to hire a full-time California Director.” Sherer Supp. Aff ¶ 2. But whatever happened in 2006 that prevented ASA from hiring a full-time California Director, it could not have been marijuana’s Schedule I listing because marijuana has been so listed since 1970. See 21 U.S.C. § 812(c) (establishing initial schedules of controlled substances).
ASA Members’ Individual Standing
The petitioners also assert that the three ASA Members other than Krawitz have their own individual standing. In their opening brief, they assert that if marijuana were removed from Schedule I, the three would no longer be “deterred from cultivating their own medicine ... since they would likely be afforded a medical necessity defense in federal court.” Pet’rs’ Opening Br. 7. Nevertheless, “speculative claims dependent upon the actions of third parties do not create standing.” Gettman, 290 F.3d at 434-35 (dismissing petition — for lack of standing — of marijuana researcher who argued DEA decision not to reschedule marijuana decreased his potential customers and diminished his ability to conduct research). Here, the causal chain is even more speculative. ASA’s Members allege that their injury could be redressed by a favorable ruling because (1) if marijuana were rescheduled; and (2) if they chose to cultivate marijuana; and (3) if the federal government detected the cultivation; and (4) if the federal government prosecuted the cultivators; and (5) if the cultivators asserted a medical necessity defense; and (6) if the court accepted the medical necessity defense; *459 then (7) they would avoid criminal liability for cultivation.[6]
Moreover, the existence of a medical necessity defense for marijuana cultivation is tenuous at best. The petitioners assert that marijuana’s Schedule I status is the only thing preventing courts from recognizing the defense, citing United States v. Oakland Cannabis Buyers’ Coop., 532 U.S. 483, 121 S.Ct. 1711, 149 L.Ed.2d 722 (2001), which held that no medical necessity defense exists for the illegal distribution of various controlled substances, including marijuana, because the CSA “reflects a determination that marijuana has no medical benefits worthy of an exception.” Id. at 491, 121 S.Ct. 1711. The Court’s reasoning made clear, however, that rescheduling marijuana would not necessarily produce a medical necessity defense because “it is an open question whether federal courts ever have authority to recognize a necessity defense not provided by statute.” Id. at 490, 121 S.Ct. 1711 (“Even at common law, the defense of necessity was somewhat controversial.”).
Assuming arguendo the three ASA Members decide to cultivate marijuana, it is far from likely that a federal prosecutor would exercise his discretion to prosecute. In fact, the Department of Justice recently suggested that it did not consider it an efficient use of resources to prosecute “individuals with cancer or other serious illnesses who use marijuana as part of a recommended treatment regimen consistent with applicable law, or those caregivers in clear and unambiguous compliance with existing state law who provide such individuals with marijuana.” David W. Ogden, Deputy Attorney General, U.S. Dep’t of Justice, Investigations and Prosecutions in States Authorizing the Medical Use of Marijuana (Oct 19, 2009), available at http://www.justice.gov/opa/documents/ medical-marijuana.pdf.[7]

ASA’s Representational Standing

Finally, I believe that ASA lacks standing to bring this action on behalf of its members because ASA has failed to establish that one of its members has standing to sue in his own right. Fund Democracy, LLC v. SEC, 278 F.3d 21, 25 (D.C.Cir. 2002) (“An association only has standing to bring suit on behalf of its members when[, inter alia,] its members would otherwise have standing to sue in their own right....”)[8]
*460 Because I believe that no petitioner possesses Article III standing, I respectfully dissent.[9]

. Two individuals who joined the petitioners' quest to reschedule marijuana at the administrative stage — Jon Gettman and High Times— had petitioned for review of DEA’s earlier failure to reschedule marijuana. We dismissed their petition for lack of standing. Gettman v. DEA, 290 F.3d 430 (D.C.Cir.2002).

. The petitioners’ reply brief, while providing a more detailed standing argument and including (improperly) a supplemental affidavit, was nonetheless deficient. With their post-argument opportunity to supplement, the peti *455 tioners have now been allowed three chances to establish standing.

. We have found "good cause” if, for example, a petitioner had a reasonable belief its standing was self-evident, see Am. Library Ass’n, 401 F.3d at 492 or if supplemental declarations submitted with a reply brief made standing "patently obvious,” see Communities Against Runway Expansion, 355 F.3d at 685.

. Oregon's policy — not that of the VA or of DEA- — is the direct cause of Krawitz's annual $140.00 injury because, if Oregon eliminated the physician documentation requirement, Krawitz’s injury would be immediately redressed. By contrast, if we ordered DEA to reschedule marijuana, the VA might rescind VHA Directive 2011-004 and Krawitz's VA physician might complete the Oregon documentation for Krawitz. See Memorandum Regarding State Medical Marijuana Registration Forms from Department of Veterans Affairs General Counsel to Under Secretary of Health at 5 (May 21, 2008) (cited by VHA Directive 2011-004) (stating, prior to promulgation of VHA Directive 2011-004, "[a]t present, the language of 38 C.F.R. § 17.38(c)(3) does not require the completion of [medical marijuana] forms by VHA physicians [because t]his regulatory provision eliminates non-FDA approved drugs from the basic care provided to veterans”); see also VHA Directive 2011-004, supra.

. ASA and similar organizations have had great political success in recent years. See, e.g., Louise Radnofsky, Voters Weigh Social Issues, Wall St. L, Nov. 7, 2012 (seventeen states and District of Columbia have legalized the medicinal use of marijuana; Washington and Colorado have legalized marijuana for recreational use).

.The ASA Members’ standing argument is reminiscent of the nursery rhyme "For Want of a Nail:”
For want of a nail, the shoe was lost,
For want of the shoe, the horse was lost,
For want of the horse, the rider was lost,
For want of the rider, the battle was lost,
For want of the battle, the kingdom was lost,
And all for the want of a horse-shoe nail! Stuart Minor Benjamin, Proactive Legislation and the First Amendment, 99 Mich. L.Rev. 281, 329 n. 168 (2000) (quoting Mother Goose's Nursery Rhymes 191 (Walter Jerrold ed., Alfred A. Knopf Inc. 1993) (1903)). While a lost nail may lead to a lost kingdom, establishing Article III standing requires more than a good imagination.

. But see James M. Cole, Deputy Attorney General, U.S. Dep’t of Justice, Guidance Regarding the Ogden Memo in Jurisdictions Seeking to Authorize Marijuana for Medical Use (June 29, 2011), available at http://www. azdhs.gov/medicalmarijuana/documents/ resources/ guidance_regarding_medical_marijuana.pdf (Ogden Memorandum was not intended to shield from prosecution "planned facilities” with "revenue projections of millions of dollars” and that “[p]ersons who are in the business of cultivating, selling or distributing marijuana ... are in violation of the Controlled Substances Act, regardless of state law”).

. In addition, intervenor Carl Olsen lacks standing. He concedes that his injury can be redressed only if marijuana is removed from all CSA schedules, a remedy the petitioners *460 do not seek. Furthermore, Olsen makes distinct arguments from those of the petitioners — for example, he invokes "federalism”— and thus he cannot supply the requisite standing. See Ill. Bell Tel. Co. v. FCC, 911 F.2d 776, 786 (D.C.Cir.1990).

. While my dissent begins with the observation that some of my colleagues are more forgiving than others in allowing exceptions to the Sierra Club rule, codified in Rule 28(a)(7), it is now apparent the majority would have the exceptions swallow the Rule. Ignoring our longstanding precedent that arguments may not be made for the first time in a reply brief, see, e.g., Porter v. Shah, 606 F.3d 809, 814 n. 3 (D.C.Cir.2010), during oral argument, see, e.g., United States v. Southerland, 486 F.3d 1355, 1360 (D.C.Cir.2007), or during rebuttal oral argument, see, e.g., Coal. of Battery Recyclers Ass’n v. EPA, 604 F.3d 613, 623 (D.C.Cir.2010) — they would revise Rule 28(a)(7) to create a "reasonable beliefreffort” mega-exception permitting any party to assert an entirely new standing theory not only in a reply brief or during oral argument but even after oral argument.
The elephant in the room is that we do not allow "a party to assert an entirely new injury (and thus, an entirely new theory of standing) in its reply brief,” Coal. for Responsible Regulation, 684 F.3d at 147, much less in a supplemental brief. As already noted, in his supplemental affidavit Krawitz raises a new injury and, thus, a new theory of standing. Yet in response to this undisputed fact, my colleagues do not attempt to claim Krawitz’s theory of standing is not new. Instead, they skirt the issue by noting that DEA did not so argue in its supplemental brief. First and foremost, whether a party has established standing is for the court — not the parties — to decide. See, e.g., Animal Legal Defense Fund, Inc. v. Espy, 29 F.3d 720, 723 n. 2 (D.C.Cir. 1994) ("Standing ... is a jurisdictional issue which cannot be waived or conceded.”); cf. Am. Library Ass’n, 401 F.3d at 495 ("[W]hether standing is self-evident must be judged from the perspective of the court[.]”). And the majority's statement that Rule 28(a)(7) (let alone Sierra Club) "ha[s] no relevance” absent an objection, see Maj. Op. 444, is wholly unsupported. In any event, DEA did protest that Krawitz raised a new standing theory. While DEA did not cite Sierra Club or Rule 28(a)(7), it maintained that Krawitz "states, for the first time, that he participates in the 'Oregon Medical Marijuana Program;' " and now "claims not that he is denied VA pain treatment in Oregon but that the VA prohibits its physicians from completing a state program form.” Resp't Supp. Br. 1.
The majority's new exception declares that "[i]f the parties reasonably, but mistakenly, believed that the initial filings before the court had sufficiently demonstrated standing, the court may — as it did here — request supplemental affidavits and briefing.” Maj. Op. 443 (citing Pub. Citizen, Inc., 489 F.3d at 1296-97; Am. Libraiy Ass’n, 401 F.3d at 492, 496); see also Maj. Op. 444 (suggesting we should allow supplemental briefing if parties make a "reasonable effort” to satisfy Rule 28(a)(7)). But Public Citizen and American Library Association establish no such exception to our Rule. See, e.g., Am. Library Ass’n, 401 F.3d at 492 (establishing exception if the petitioners "reasonably [but mistakenly] believed their standing [was] self-evident”). Moreover, I do not see how the majority's new exception would not apply in virtually every case — presumably parties do not make "unreasonable” standing arguments or fail to use reasonable efforts to establish their standing.