OIL, CHEMICAL AND ATOMIC WORKERS INTERNATIONAL UNION, AFL–CIO, et al., Appellants,

v.

Bill RICHARDSON, Secretary of Energy, et al., Appellees.

No. 99–5295.

United States Court of Appeals, District of Columbia Circuit.

Argued May 16, 2000.

Decided July 7, 2000.

Reuben A. Guttman argued the cause for appellants. With him on the briefs were Daniel Guttman, Brian P. McCafferty, Charles V. Firth and Traci L. Buschner.

Scott S. Harris, Assistant U.S. Attorney, argued the cause for appellees. With him on the brief were Wilma A. Lewis, U.S. Attorney, R. Craig Lawrence, Assistant U.S. Attorney, Lois J. Schiffer, Assistant Attorney General, U.S. Department of Justice, and Evelyn S. Ying, Attorney.

Francis L. Casey, III, Kathy B. Houlihan, Charles P. Groppe, Alex S. Karlin, Terry R. Yellig and Richard M. Resnick were on the brief for appellee BNFL, Inc., et al.

Before: WILLIAMS, SENTELLE and HENDERSON, Circuit Judges.

Opinion for the Court filed by Circuit Judge STEPHEN F. WILLIAMS.

STEPHEN F. WILLIAMS, Circuit Judge:

In 1997 the Department of Energy ("DOE") contracted to decontaminate and decommission three buildings at its nuclear weapons facility in Oak Ridge, Tennessee. The Oil, Chemical and Atomic Workers International Union, AFL–CIO ("OCAW"), a labor union whose members work at this facility, brought suit seeking to enjoin execution of the contract. (Also suing were several of the union's individual members, who will henceforth be disregarded.) OCAW's theories are twofold. First, it claims that DOE and its contractors violated § 3161 of the National Defense Authorization Act for Fiscal Year 1993, 42 U.S.C. § 7274h, which it reads as requiring DOE to provide its members continued employment and employment benefits after the implementation of a major workforce restructuring. Second, it argues that under § 102(2)(c) of the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4332(2)(C) the recycling and sale of recovered metals from the project cannot proceed unless an environmental impact statement is first prepared. The district court granted defendants' motion to dismiss on the first claim, *Oil, Chemical & Atomic Workers Int'l Union, AFL–CIO v. Peña*, 18 F.Supp.2d 6, 16 (D.D.C.1998) ("*OCAW I*"), and their motion for summary judgment on the second. *Oil, Chemical & Atomic Workers Int'l Union, AFL–CIO v. Peña*, 62 F.Supp.2d 1, 2 (D.D.C.1999) ("*OCAW II*").

On the § 3161 claim, OCAW made clear at oral argument that its sole current claim is that DOE failed to enforce the labor provisions of its contracts. Because nothing in the statute provides a meaningful standard against which to judge any such agency nonenforcement, we find the claim barred by the preclusion of review in 5 U.S.C. § 701(a)(2). See *Heckler v. Chaney*, 470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985). As to the NEPA claim, § 113(h) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9613(h), withholds federal court jurisdiction (subject to irrelevant exceptions) over any "challenges to removal or remedial action· selected under section [104] of this title." Because the recycling activity provided for in the contracts clearly qualifies as such a "removal" action, we

have no jurisdiction over the NEPA claim. Accordingly, we affirm.

\* \* \*

For many years the Oak Ridge Reservation was used to enrich uranium for nuclear weapons and nuclear power generation. In 1989 EPA placed it on the National Priority List of contaminated sites. *OCAW II*, 62 F.Supp.2d at 2. Later, acting under CERCLA § 120, 42 U.S.C. § 9620, EPA, DOE, and the Tennessee Department of Education and Conservation entered into a Federal Facilities Agreement ("FFA") for Oak Ridge, thereby scheduling the facility "for decontamination and decommissioning, waste management, and environmental remediation." In March 1997 they amended the FFA to include a schedule for the cleanup of three buildings at Oak Ridge's K–25 Gaseous Diffusion Plant, the cleanup in dispute here. In August 1997 DOE awarded a contract to British Nuclear Fuels, Inc. ("BNFL") to remove the equipment and decontaminate the buildings. We turn first to the § 3161 issue, then to NEPA.

After determining that a large reduction in workforce would result from closing the facility, DOE undertook workforce restructuring efforts. Section 3161 of the National Defense Authorization Act for Fiscal Year 1993, 42 U.S.C. § 7274h, requires that when "a change in the workforce at a defense nuclear facility is necessary, the Secretary of Energy … shall develop a plan for restructuring the workforce for the defense nuclear facility." DOE's initial workforce restructuring plan ("WRP"), which was finalized on November 29, 1995, mimicked § 3161's stated objectives. It said, for instance, that hiring preferences would be provided to eligible employees "to the extent practicable." Oak Ridge Operations Work Force Restructuring Plan, at 5–1 (November 29, 1995). The WRP also provided for medical benefits, outplacement assistance, relocation assistance, training programs, and education assistance. *Id.* at 4–1 to 5–2.

The contract with BNFL effectively delegated to it the fulfillment of the WRP's mandates. DOE/BNFL Contract, at H–9 to H–10. BNFL then negotiated a Project Labor Agreement ("PLA") with Knoxville Building and Construction Trades Council, AFL–CIO ("Building Trades"), to address how the construction workers for the project would be hired. The PLA incorporated the hiring preference embodied in the WRP: "[T]he Union shall recognize and select qualified applicants for referral in accordance with Section 3161 … and/or the Employer's contractual obligation to [DOE] relating to 3161." Project Agreement Between BNFL Inc. and Building Trades (August 7, 1997), at 6.

We agree with the district court that review of the § 3161 claim is barred by § 701(a)(2) of the Administrative Procedure Act ("APA"). (As such preclusion is jurisdictional, *Claybrook v. Slater*, 111 F.3d 904, 908 (D.C.Cir.1997), we may affirm dismissal of the claim without reaching the other jurisdictional defenses—such as DOE's mootness contention. See *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584–85, 119 S.Ct. 1563, 1570, 143 L.Ed.2d 760 (1999).) APA judicial review is unavailable "to the extent that—(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." 5 U.S.C. § 701(a). Agency action falls within § 701(a)(2) when "the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Heckler v. Chaney*, 470 U.S. 821, 830, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985). Here, the statute says that "the Secretary shall be *guided* by the following *objectives,*" 42 U.S.C. § 7274h(c), which include providing terminated employees with hiring preferences "to the extent practicable," *id.* Noting that these provisions gave the Secretary "enormous discretion," the district court held that § 3161 fell within *Chaney*'s bar. *OCAW I*, 18 F.Supp.2d at 15–16.

In view of OCAW's present exclusive focus on enforcement of the BNFL con-

tract, we need not finally resolve whether for every context the statute's language reaches *Chaney* levels of discretion. Section 3161 requires the Secretary of Energy to "develop a plan for restructuring the workforce," and the Secretary did so through the WRP, which incorporated the further mandates of § 3161. DOE then delegated the statutory requirements in its contract with BNFL, which were in turn subdelegated in part to Building Trades. Because DOE satisfied its requirement to develop a plan, OCAW can now complain only of inadequate contract enforcement. It thereby brings its cause squarely within *Heckler v. Chaney*'s presumption of unreviewability for enforcement decisions: "[A]n agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion." 470 U.S. at 831, 105 S.Ct. 1649. The Court justified this presumption on several grounds. First, the agency has expertise in assessing whether a violation has occurred and whether it is a valuable use of the agency's resources to commence enforcement proceedings. Second, "when an agency refuses to act it generally does not exercise its *coercive* power over an individual's liberty or property rights, and thus does not infringe upon areas that courts are often called upon to protect." *Id.* at 832, 105 S.Ct. 1649.

Although *Chaney* did not explicitly address contract enforcement, it seems indistinguishable from civil enforcement activities in the dimensions relevant to *Chaney*; certainly OCAW offers no distinctions. Nor does the statute contain any guidance on the Secretary's exercise of enforcement power, such as might rebut the presumption. See *id.* at 833, 105 S.Ct. 1649. Nor, finally, can we find any such limits in DOE's Notice of Interim Planning Guidance, Planning Guidance for Contractor Work Force Restructuring, 61 Fed.Reg. 8593, 8595/2, 8599/2 (1996), to which OCAW points in a search for the needed non-discretionary backbone. Of course our decision here says nothing about the possible ability of plaintiffs to sue as third-party beneficiaries of the BNFL contract or the PLA.

■ We thus turn to the NEPA claim. CERCLA § 113(h), 42 U.S.C. § 9613(h), says that "[n]o Federal court shall have jurisdiction under Federal law ... to review any challenges to removal or remedial action selected under section [104] of this title, or to review any order issued under section [106] of this title." Although § 113(h) is subject to limited exceptions—e.g., for recovery of "response costs or damages or for contribution," 42 U.S.C. § 9613(h)(1), and for reimbursement of costs in response to a remedial order that was arbitrary and capricious, *id.* § 9613(h)(3)—it otherwise effectuates a "blunt withdrawal of federal jurisdiction," *North Shore Gas Co. v. EPA*, 930 F.2d 1239, 1244 (7th Cir.1991), despite its more limited rationale "that pre-enforcement review would be a significant obstacle to the implementation of response actions and the use of administrative orders." S.Rep. No. 11, 99th Cong. 1, 58 (1985).

The government here says that the cleanup plan constitutes a "removal" action as the term is used in § 113(h). This is defined in 42 U.S.C. § 9601(23) as:

> the cleanup or removal of released hazardous substances from the environment, such actions as may be necessary [sic] taken in the event of the threat of release of hazardous substances into the environment, ... the disposal of removed material, or the taking of such other actions as may be necessary to prevent, minimize, or mitigate damage to the public health or welfare or to the environment....

■ OCAW correctly points out that recycling is not explicitly mentioned here, though it is in the definition of "remedial action." 42 U.S.C. § 9601(24). But we agree with the district court that the broader language of § 9601(23), "disposal of removed material," is properly understood to encompass disposals that take the

form of recycling. *OCAW II*, 62 F.Supp.2d at 6 n.5. Moreover, because "remedial actions" are also protected by § 113(h), OCAW's argument would prove pointless here, unless, for some unmentioned reason, DOE's having said "removal" when it should have said "remedial action" were fatal to its invocation of § 113(h).

OCAW challenges the applicability of § 113(h) on the basis that this recycling is not within the scope of DOE's "removal action," largely because the decision to recycle is left to the sole discretion of BNFL. Relying on the language of DOE's Engineering Evaluation/Cost Analysis (comparing the alternatives for addressing contamination at the K–25 facility), however, the district court found that despite the allowance of discretion, DOE and BNFL expressed a strong preference for recycling. Because recycling was the "primary method of waste disposal" contemplated by the parties, it was part of the "removal action" for purposes of § 113(h). *OCAW II*, 62 F.Supp.2d at 6. Moreover,

other documents "mad[e] abundantly clear that BNFL is absolutely required to dispose of all waste whether by recycling or otherwise," *id.* at 7, and such other "disposal of removed material" is explicitly within the definition of a removal action. See 42 U.S.C. § 9601(23).

The second argument alone is decisive. As *both* options under the plan qualified as actions sheltered by § 113(h), the case requires no theorizing as to whether the section might apply to a non-sheltered practice that was somehow part of an action otherwise protected by § 113(h). OCAW's claims here are insubstantial.

The judgment of the district court is

*Affirmed.*