**FUND DEMOCRACY, LLC, Petitioner,**

v.

**SECURITIES AND EXCHANGE COMMISSION, Respondent.**

No. 01–1367.

United States Court of Appeals, District of Columbia Circuit.

Decided Feb. 1, 2002.

Before: EDWARDS, SENTELLE, and HENDERSON, Circuit Judges.

Opinion for the Court filed by Circuit Judge SENTELLE.

Opinion concurring in part and dissenting in part filed by Circuit Judge EDWARDS.

SENTELLE, Circuit Judge:

Fund Democracy ("petitioner") petitions for review of an order of the Securities and Exchange Commission ("SEC" or "the Commission") denying petitioner's request for a hearing and granting to an investment company and its investment advisors an exemption from certain provisions of the Investment Company Act of 1940, 15 U.S.C. § 80a–1 *et seq.* The SEC moves to dismiss the petition for review, arguing that Fund Democracy has no standing to bring this petition. We agree.

### *Background*

The underlying proceeding before the Commission arose from the application of Hillview Investment Trust II and its investment advisor Hillview Capital Advisors, LLC (collectively, "Hillview") seeking exemption from 15 U.S.C.§ 80a–15(a) which provides that no person may serve as an investment advisor of a registered investment company "except pursuant to a written contract [which] has been approved by the vote of a majority of the outstanding voting securities" of the company. 15 U.S.C. § 80a–39(a) requires the Commission, before issuing orders, to provide notice to "interested persons." 17 C.F.R. § 270.0–5 provides that after the issuance of such notice the Commission needs to order a hearing on the matter, *inter alia,* "upon the request of an interested person."[1] Fund Democracy request-

---

1. "Interested person" is defined in the governing statute, 15 U.S.C. § 80a–2(a)(19):
   (19) "Interested person" of another person means—
     (A) when used with respect to an investment company—
       (i) any affiliated person of such company,

   (ii) any member of the immediate family of any natural person who is an affiliated person of such company,
   (iii) any interested person of any investment adviser of or principal underwriter for such company,

ed such a hearing, explaining that it

(iv) any person or partner or employee of any person who at any time since the beginning of the last two completed fiscal years of such company has acted as legal counsel for such company,

(v) any person or any affiliated person of a person (other than a registered investment company) that, at any time during the 6–month period preceding the date of the determination of whether that person or affiliated person is an interested person, has executed any portfolio transactions for, engaged in any principal transactions with, or distributed shares for—

(I) the investment company;

(II) any other investment company having the same investment adviser as such investment company or holding itself out to investors as a related company for purposes of investment or investor services; or

(III) any account over which the investment company's investment adviser has brokerage placement discretion,

(vi) any person or any affiliated person of a person (other than a registered investment company) that, at any time during the 6–month period preceding the date of the determination of whether that person or affiliated person is an interested person, has loaned money or other property to—

(I) the investment company;

(II) any other investment company having the same investment adviser as such investment company or holding itself out to investors as a related company for purposes of investment or investor services; or

(III) any account for which the investment company's investment adviser has borrowing authority,

(vii) any natural person whom the Commission by order shall have determined to be an interested person by reason of having had, at any time since the beginning of the last two completed fiscal years of such company, a material business or professional relationship with such company or with the principal executive officer of such company or with any other investment company having the same investment adviser or principal underwriter or with the principal executive officer of such other investment company:

*Provided,* That no person shall be deemed to be an interested person of an investment company solely by reason of (aa) his being a member of its board of directors or advisory board or an owner of its securities, or (bb) his membership in the immediate family of any person specified in clause (aa) of this proviso; and

(B) when used with respect to an investment adviser of or principal underwriter for any investment company—

(i) any affiliated person of such investment adviser or principal underwriter,

(ii) any member of the immediate family of any natural person who is an affiliated person of such investment adviser or principal underwriter,

(iii) any person who knowingly has any direct or indirect beneficial interest in, or who is designated as trustee, executor, or guardian of any legal interest in, any security issued either by such investment adviser or principal underwriter or by a controlling person of such investment adviser or principal underwriter,

(iv) any person or partner or employee of any person who at any time since the beginning of the last two completed fiscal years of such investment company has acted as legal counsel for such investment adviser or principal underwriter,

(v) any person or any affiliated person of a person (other than a registered investment company) that, at any time during the 6–month period preceding the date of the determination of whether that person or affiliated person is an interested person, has executed any portfolio transactions for, engaged in any principal transactions with, or distributed shares for—

(I) any investment company for which the investment adviser or principal underwriter serves as such;

(II) any investment company holding itself out to investors, for purposes of investment or investor services, as a company related to any investment company for which the investment adviser or principal underwriter serves as such; or

(III) any account for which the investment adviser has borrowing authority,

(vii) any natural person whom the Commission by order shall have determined to be an interested person by reason of having had at any time since the beginning of the last two completed fiscal years of such investment company a material business or professional relationship with such investment adviser or principal underwriter.

"serves as an advocate and information resource for mutual fund shareholders through a multi-faceted advocacy and educational program." The SEC rejected the request for a hearing and granted the exemption.

## Analysis

Before us the Commission moved for dismissal on the grounds that Fund Democracy has no standing under Article III of the Constitution to bring this petition. Under Article III, federal courts only have jurisdiction to resolve cases and controversies. *See, e.g., Chicago and Grand Trunk Ry. Co. v. Wellman,* 143 U.S. 339, 12 S.Ct. 400, 36 L.Ed. 176 (1892). Therefore, in order to bring an action within our jurisdiction, the party must demonstrate that it has standing to bring that action. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992). To satisfy this requirement a plaintiff or petitioner must, at an "irreducible constitutional minimum ... demonstrate that it has suffered a concrete and particularized injury that is: (1) actual or imminent, (2) caused by or fairly traceable to an act that the litigant challenges in the instant litigation, and (3) redressable by the court." *Florida Audubon Soc'y v. Bentsen,* 94 F.3d 658, 663 (D.C.Cir.1996) (en banc) (internal quotation marks and citations omitted). Fund Democracy does not meet this standard.

## Associational Standing

Petitioner argues that it has associational standing to bring this action. That theory fails. An association only has standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right, the interests it seeks to protect are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 181, 120 S.Ct. 693, 704, 145 L.Ed.2d 610 (2000). Fund Democracy stumbles on the first step. It does not appear that Fund Democracy actually has any members. In any event, Fund Democracy has not shown that any of the individual mutual fund investors it claims as "members" have standing to sue in their own right.

First, it is not clear that Fund Democracy has either members or any equivalent affiliates. Fund Democracy admitted in another pleading that it is a one-person business, run by its CEO Mercer E. Bullard, who is also the attorney representing Fund Democracy in this court. Bullard does not argue that he personally has standing. Instead, he argues that Fund Democracy "represents" an "informal consortium" of various groups whose members are individual mutual fund investors and are threatened with injury by the SEC order. Fund Democracy describes in detail several examples of how it has worked closely in the past with other groups to conduct various "advocacy initiatives" such as challenging applications for exemptions, petitioning the SEC to adopt rules, and lobbying against proposed legislation.

Fund Democracy's past work with various groups of individual investors does not render these groups the equivalent of members of Fund Democracy. In determining whether an organization that has no members in the traditional sense may nonetheless assert associational standing, the question is whether the organization is the functional equivalent of a traditional membership organization. *See Hunt v. Washington State Apple Adver. Comm'n,* 432 U.S. 333, 342–45, 97 S.Ct. 2434, 2441–42, 53 L.Ed.2d 383 (1977); *American Legal Found. v. FCC,* 808 F.2d 84, 89–90

(D.C.Cir.1987) ("*ALF*"). In *Hunt*, the Court held that a state commission had standing to assert the claims of apple growers and dealers. The Court identified three reasons for treating the state commission like a traditional membership organization. First, the commission "serve[d] a specialized segment of the State's economic community which is the primary beneficiary of its activities, including the prosecution of this kind of litigation." 432 U.S. at 344, 97 S.Ct. at 2442. Second, the apple growers and dealers possessed "all of the indicia of membership in an organization." *Id*. For example, the growers and dealers elected the members of the state commission, they alone could serve on the commission, and they alone financed the commission's activities, albeit through mandatory assessments rather than voluntary contributions. *See id.* at 344–45, 97 S.Ct. at 2442. Third, the fortunes of the commission were closely tied to those of its constituency. *See id.* at 345, 97 S.Ct. at 2442.

In *ALF* we held that a media watchdog group lacked standing to assert claims on behalf of members of the public who regularly watch the news. Fund Democracy's case falls much closer to *ALF* than to *Hunt*. In *ALF*, we noted that ALF did not serve a "discrete, stable group of persons with a definable set of common interests." 808 F.2d at 90. Indeed, ALF could purport to serve all who read newspapers, watch television, or listen to the radio. *See id.* Similarly, Fund Democracy purports to represent "tens of millions of individual investors." Moreover, ALF did not show that its "supporters" played any role in selecting its leadership, guiding its activities, or financing those activities. *See id.* Similarly, because Fund Democracy's course is steered entirely by Bullard, and Fund Democracy does not claim to receive funding from its purported members, it may have reasons for instituting suit other than to assert the rights of these alleged supporters. *See id.* Indeed, Fund Democracy's assertion of standing appears even weaker than ALF's. ALF specifically identified certain "supporters" who swore that ALF represented their views and that they approved of the ALF''s activities. *See id.* at 88. Fund Democracy has not identified a single individual investor who fills such a role.

In any event, Fund Democracy lacks associational standing. Petitioner attempts to fill this gap by alleging that it has "worked closely" with Institutional Shareholder Services ("ISS"), an entity which does have identifiable clients and which also objected to the Commission's action though it did not join the present petition. Even assuming that the mutual fund investors who are clients of ISS or members of the other groups with whom Fund Democracy has "worked" are properly considered "members" of Fund Democracy, petitioner still cannot qualify for associational standing. Fund Democracy has not sufficiently established that any of these individuals would have standing to sue in his own right. The harm alleged by Fund Democracy is that investors or prospective investors will be misled about the true single-manager nature of the Hillview fund and will suffer a diminution of voting rights as a result of the SEC order granting an exemption. Therefore, it appears that the only people who will be directly affected by the SEC's order granting Hillview's request for an exemption are those who have purchased shares in Hillview or are at least considering doing so. Yet Fund Democracy presents no evidence that any of these "members" own, intend to purchase, or are even considering purchasing shares in Hillview. *See Lujan*, 504 U.S. at 563, 112 S.Ct. at 2138 (organization must submit evidence that one or more of its members would be directly

affected apart from their special interest in the subject).

In a similar case in the Second Circuit, an association sought to challenge the grant of exemptions under the Act to certain investment companies. *See Independent Investor Protective League v. SEC,* 495 F.2d 311 (2d Cir.1974). The court held that petitioner failed to demonstrate standing by merely alleging that "it is quite conceivable that, in the future," its members will be investors in the companies at issue. *Id.* at 312. Similarly, Fund Democracy asserts in cursory fashion that "current and prospective ISS clients who are current or prospective clients of the Hillview Funds," are at risk of harm. Fund Democracy also alleges that "investors who are not shareholders of the Hillview Funds, including ISS clients, may be misled by the Funds' names." Notably, Fund Democracy does not identify a single affiliate who has invested or is considering investing in Hillview Funds. Nor has Fund Democracy even alleged that it is likely that any ISS clients will consider investing in Hillview. For these reasons, Fund Democracy lacks Article III standing to challenge the SEC's decision to grant Hillview's application.

### Procedural Interest

■■■ Similarly, Fund Democracy lacks Article III standing to challenge the SEC's refusal to hold a hearing on Hillview's application. The mere violation of a procedural requirement does not authorize all persons to sue to enforce the requirement. *See Lujan,* 504 U.S. at 571–78, 112 S.Ct. at 2142–46; *Florida Audubon Soc'y,* 94 F.3d at 664. A party has standing to challenge an agency's failure to abide by a procedural requirement only if the government act performed without the procedure in question will cause a distinct risk to a particularized interest of the plaintiff. *See Florida Audubon Soc'y,* 94 F.3d at 664. Because Fund Democracy has no actual members, and has not even shown that any of its purported members will be affected by the grant of Hillview's application, Fund Democracy has not shown a distinct risk to its particularized interest.

### Standing as an "Interested Person"

■■■ Fund Democracy argues that it has standing because it is an "interested person" for purposes of Rule 270.0–5, which allows "interested persons" to request a hearing on an application. That petitioner is an "interested person" is a most tenuous proposition. *See* footnote 1, *supra.* But, even assuming that Fund Democracy is an "interested person" under the rule and therefore eligible to participate in the SEC proceedings, this does not mean that Fund Democracy has Article III standing. Participation in agency proceedings is alone insufficient to satisfy judicial standing requirements. *See ALF,* 808 F.2d at 89. Because agencies are not constrained by Article III, they may permit persons to intervene in the agency proceedings who would not have standing to seek judicial review of the agency action. *See Envirocare of Utah, Inc. v. NRC,* 194 F.3d 72, 74 (D.C.Cir.1999). For this reason, we agree with the Second Circuit which has expressly rejected the argument that an individual's status as an "interested person" is sufficient to confer standing to petition for review of an SEC order under the Act. *See Option Advisory Serv., Inc. v. SEC,* 668 F.2d 120, 122 (2d Cir.1981); *Independent Investor Protective League,* 495 F.2d at 313.

Fund Democracy suggests that Congress specifically intended to grant to all "interested persons" a right to a hearing before the SEC and that the denial of this right therefore confers standing. *See generally Warth v. Seldin,* 422 U.S. 490, 500, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975) (the injury required by Article III may exist solely by virtue of statutes creating legal rights, the invasion of which creates

standing). Even assuming Congress intended to grant a right to a hearing to all interested persons and that Fund Democracy is among those persons, the deprivation of that right does not alone confer Article III standing. The grant of a procedural right cannot serve as the basis for Article III standing unless "the procedures in question are designed to protect some threatened concrete interest of [petitioner's] that is the ultimate basis of his standing." *Lujan*, 504 U.S. at 573 n. 8, 112 S.Ct. at 2143 n. 8; *see also Florida Audubon Soc'y*, 94 F.3d at 664. As already noted, Fund Democracy has not shown any such concrete interest apart from the procedural injury.

Because Fund Democracy has no standing to bring this petition for review of the Securities and Exchange Commission's order, we grant the Commission's motion to dismiss.

*So ordered.*

HARRY T. EDWARDS, Circuit Judge, concurring in part and dissenting in part:

I concur in the result reached by the court. Under the applicable agency regulations, any "interested person" may request a hearing on an application. 17 C.F.R.§ 270.0–5. However, the SEC is required to hold such a hearing only if it is determined to be "necessary or appropriate in the public interest or for the protection of investors." In this case, the SEC denied petitioner's request for a hearing, because it had already considered and reasonably disposed of the issues presented in 1995 when it initially approved another investment company's application for a manager of managers exemption. The SEC was thus fully justified in denying petitioner's request for a hearing. I therefore agree that the agency's action should be summarily affirmed.

I also agree that petitioner has no standing to seek judicial review of the merits of the SEC's order. It is clear that petitioner has not satisfied Article III standing requirements on this score. I do not agree, however, that petitioner *lacks standing* to seek review of the agency's denial of the requested hearing.

It is true that our cases require plaintiffs to demonstrate that the denial of a procedural right will jeopardize interests particular to them, but they do not go so far as to deny standing in cases where a statute or regulation affords a party such a particularized procedural right. In *Florida Audubon Society v. Bentsen*, 94 F.3d 658, 664 (D.C.Cir.1996) (*en banc*), we reiterated the principle that, when the government fails to comply with *generalized* procedural requirements (in that case, of the National Environmental Policy Act), a plaintiff seeking to challenge the alleged violation of the procedural rule must demonstrate that the government's failure to comply will cause a distinct risk to a particularized interest of the plaintiff. We held that "the mere violation of a procedural requirement thus does not permit any and all persons to sue to enforce the requirement." *Id.* Similarly, in *City of Orrville, Ohio v. FERC*, 147 F.3d 979, 985 (D.C.Cir.1998), we held that a party does not acquire "a direct stake in a litigation" for purposes of standing simply by participating in the administrative proceedings giving rise to the litigation (internal citation omitted). These cases are inapposite, for they do not address the issue that we face in the instant matter.

Where a statute or a regulation affords a particular party an undisputed right to seek an administrative hearing, *Florida Audubon Society* does not compel the conclusion that the party lacks standing to challenge an agency's refusal to grant the required hearing. In this case, the governing regulation permits an "interested person" to submit relevant written facts

and request a hearing. *See* 17 C.F.R. § 270.0–5. The Commission must order such a hearing if it appears to be necessary or appropriate in the public interest or for the protection of investors. *Id.* In my view, petitioner, as an "interested person," has standing to challenge as arbitrary the Commission's denial of its request for a hearing.

It is immaterial that petitioner cannot seek review of the merits of the SEC order. The particularized interest here is petitioner's right to seek a hearing and to have one granted when it is "necessary or appropriate in the public interest or for the protection of investors." To hold otherwise is to suggest that the agency could deny with impunity the right of any "interested person" even to receive notice or appear before the agency pursuant to 15 U.S.C. § 80a–39(a) with no threat of judicial review. Standing law does not condone such a result.