**NATIONAL COALITION FOR STU-DENTS WITH DISABILITIES and Legal Defense Fund, et al., Plaintiffs,**

v.

**Alice P. MILLER, et al. Defendants.**

**No. CIV. 02–1880RJL.**

United States District Court, District of Columbia.

Oct. 30, 2002.

Michael J. Beattie, National Coalition for Students with Disabilities Education Legal Defense, Fairfax, VA, for plaintiff.

Michael D. Berman, Office of Atty. Gen., Baltimore, MD, for defendant.

### Memorandum and Order

LEON, District Judge.

Before the Court is plaintiffs' motion for a preliminary injunction and defendant Linda Lamone's motion to dismiss. The plaintiffs allege that the defendants violated the National Voter Registration Act of 1993 by not designating two Washington Metropolitan Area Transit Authority ("WMATA") disability offices as voter registration sites, and seek a preliminary injunction to bring about compliance with the statute. For the reasons set forth

below, the Court denies the motion for a preliminary injunction, dismisses the claims against defendant Linda Lamone for lack of personal jurisdiction, and dismisses the case against defendant Alice Miller because the plaintiffs do not satisfy the standing requirements.

### I.  Background

The plaintiffs—the National Coalition for Students with Disabilities Education and Legal Defense Fund ("NCSD")[1] and Erika Tracy on behalf of herself and a class of similarly situated persons—allege that defendant Linda Lamone, the State Administrator of the Maryland State Board of Election, and Alice Miller, the Director of the District of Columbia ("D.C.") Board of Elections, have violated the National Voter Registration Act ("NVRA") by failing to designate as voter registration sites for persons with disabilities the Washington Metropolitan Area Transit Authority ("WMATA") Access Office, in Montgomery, Maryland, and the disability services program office in the WMATA headquarters building in Washington, D.C., respectively.

The NVRA requires states to designate as voter registration agencies "all offices ... that provide State-funded programs primarily engaged in providing services to persons with disabilities." 42 U.S.C. § 1973gg–5(a)(2)(B). It further mandates that the staff at voter registration sites shall make the following services available: distribution of voter registration application forms, assistance to applicants in completing voter registration application forms, and acceptance of completed voter registration application forms. 42 U.S.C. § 1973gg–5(a)(4)(a). Also, such offices must provide a form that asks the question, "If you are not registered to vote

---

1.  NCSD is a nonprofit organization headquartered in Fairfax, Virginia, whose primary purpose is to improve educational opportunities and enforce the legal rights of students with disabilities.  Compl. at 3.

where you live now, would you like to apply to register to vote here today?" 42 U.S.C. § 1973gg–5(a)(6)(B).

The two offices providing services to persons with disabilities, which the plaintiffs seek to have designated as voter registration sites, are administered by the WMATA, an independent government agency created by an interstate compact between the District of Columbia, the Commonwealth of Virginia, and the State of Maryland. Pub.Law No. 92–349, 86 Stat. 464, amending Pub.Law No. 89–774, 80 Stat. 1324; *see also* D.C.Code § 9–1103.01. The Compact authorizes WMATA to construct and operate a mass transport system for the Washington Metropolitan Area. WMATA also provides paratransit services, which are specialized, curb-to-curb services for persons with disabilities who are not able to ride fixed-route public transportation. *See* Pls.' Mot. for Prelim. Inj. at 2–3.

Plaintiff Erika Tracy, who is also a member of NCSD and is legally blind, became a WMATA paratransit client in 1999. Compl. at 3. She previously lived in Washington, D.C., and moved to Maryland in 1999. She has never been registered in D.C. or Maryland, and personnel at the WMATA disability offices have never given her the opportunity to register to vote. *Id.* at 4. The deadline for registering in Maryland in the November 2002 election was October 15, 2002, and the deadline for registering in the District was October 7, 2002.

The plaintiffs filed an administrative complaint with both defendants in April 2001. After defendants took no action on the complaint, the plaintiffs filed this action on September 25, 2002. The defendants responded on October 8, 2002, and a hearing was held on October 9, 2002. The plaintiffs seek, among other relief, for the Court to (1) enter a declaratory judgment that defendants violated the NVRA; (2) order the two defendants to make available appropriate voter registration information; and (3) order the defendants to locate all recipients of services since April 2001 and ask those recipients whether they would like to register to vote. At the same time, the defendants filed this motion for a preliminary injunction to have defendants temporarily designate the two disability offices as voter registration sites.

## II. Discussion

*A. Personal Jurisdiction Over Linda Lamone, State Administrator, Maryland State Board of Education*

██ Defendant Linda Lamone, the State Administrator of the Maryland State Board of Election, argues that the case against her should be dismissed because the Court lacks personal jurisdiction. The Court agrees. The question of personal jurisdiction in this matter is governed both by the District's long-arm statute and the constitutional requirements of the Due Process Clause. *GTE New Media Services Incorporated v. BellSouth Corporation,* 199 F.3d 1343, 1347 (D.C.Cir.2000). The D.C. statute provides that the plaintiffs must demonstrate that the defendant transacted business in the District and, importantly, that the plaintiffs' claim arose from such business. D.C.Code Ann. § 13–423 (1981).[2] The plaintiff must allege non-conclusory facts that establish a prima fa-

---

**2.** Specifically, the statute provides, in part, that

    (a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's—

    (1) transacting any business in the District of Columbia . . . .
D.C.Code Ann. § 13–423 (1981).

cie showing of personal jurisdiction. *See First Chicago Int'l v. United Exchange Co.*, 836 F.2d 1375, 1378 (D.C.Cir.1988). Since the statutory requirements have been found to be coextensive with the Due Process requirements, the discussion of the statute and the due process requirements collapses into one. *United States v. Ferrara*, 54 F.3d 825, 828 (D.C.Cir.1995).

Here, the Court cannot support personal jurisdiction over the defendant in her individual capacity because the plaintiff failed to allege that the defendant Linda Lamone, who resides and works in or near Annapolis, Maryland, Compl. at 4, has any personal contacts with the District. *See M.S. Ali v. District of Columbia*, 278 F.3d 1 (D.C.Cir.2002) (finding that D.C. district court did not have personal jurisdiction over individual Virginia officials in their personal capacity because "[n]owhere in [the] complaint does [the plaintiff] allege that any defendants acting in their individual capacities ... transacted business in the District"). The plaintiffs also failed to allege that the defendant had contacts with D.C. in her official capacity. Even if the defendant did have some official contacts with the District through annual meetings sponsored by the Federal Elections Commission ("FEC"), *see* Def.'s Mot. to Dismiss Compl. at 3 n. 3, there is no evidence that the failure to designate the disability office in Maryland as a voter registration site arose from those contacts. Instead, the defendant specifically explains that the meetings with the FEC did not address the matters alleged in the complaint. *Id.* Such meetings or conferences unrelated to the injury in the complaint do not create a sufficient nexus to give the Court personal jurisdiction. *See Oil, Chemical & Atomic Workers Int'l Union, AFL–CIO v. Pena,*

18 F.Supp.2d 6, 17–18 (D.D.C.1998), *aff'd, Oil, Chemical, & Atomic Workers Int'l Union, AFL–CIO v. Richardson*, 214 F.3d 1379 (D.C.Cir.2000). For these reasons, the Court dismisses the claims without prejudice against defendant Linda Lamone.

*B. Plaintiffs' Standing for Claims Against Alice Miller, Director, D.C. Board of Elections*

The plaintiffs cannot bring an action unless they meet the "case or controversy" requirements imposed by Article III of the Constitution. *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). To satisfy the "irreducible constitutional minimum of standing, a litigant must demonstrate that it has suffered a 'concrete and particularized injury' that is: (1) 'actual or imminent,' (2) caused by, or fairly traceable, to an act that the litigant challenges in the instant litigation, and (3) redressable by the court." *Florida Audubon Soc'y v. Bentsen*, 94 F.3d 658, 663 (D.C.Cir.1996) (en banc) (citations omitted). Neither defendant can meet these requirements.

■ The one named individual plaintiff, Erika Tracy, does not meet these requirements because the Court is not able to redress her injury through the requested injunctions. Plaintiff Tracy is a Maryland resident who is not eligible to vote in the District. Accordingly, even if the Court ordered the D.C. Board of Election's to designate the WMATA's disability office in the District as a voter registration site, and even if such a designation would spur WMATA to alter its policies,[3] the Court's order would in no way redress Tracy's injury. Only a change in the policies of

---

**3.** This chain of causation perhaps assumes too much. Because the defendant does not control WMATA's office, it is debatable whether the defendant is responsible for the

injury. The Court need not decide whether the injury is fairly traceable to the defendant, however, because the Court finds that Tracy's injury is not redressable.

the WMATA office in Maryland would afford the plaintiffs an opportunity to register to vote.[4]

■ The other named plaintiff, NCSD, is a nonprofit organization whose primary purpose is to improve educational opportunities and enforce the legal rights of students with disabilities. An organization, like NCSD, is entitled to bring suit in federal district court if the organization has either sustained injuries itself or represents at least one member who has sustained an injury that would entitle him to standing in his own right. *See Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977). To assess whether an organization has associational standing, the Supreme Court set forth a three-part test in *Hunt*: "an association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of members in the lawsuit." 432 U.S. at 365, 97 S.Ct. 2447. Here, however, the NCSD has not satisfied the first prong of the test because it has failed to allege, let alone demonstrate, that there is any D.C. resident in its organization who is both an eligible voter and has been deprived of the opportunity to register to vote due to defendant Alice Miller's alleged NVRA violations.

The Supreme Court made clear in *Sierra Club v. Morton* that an environmental organization did not have standing because it did not allege that any of its members used the land on which a ski resort was to be built. 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972). Merely, having a special interest in conservation was not enough. *Id.* at 739, 92 S.Ct. 1361. Twenty years later, the Supreme Court in *Lujan v. Defenders of Wildlife* reiterated the proposition that an organization must have individual members with cognizable injuries, explaining, in more detail this time, that for a plaintiff to survive a summary judgment motion it must "submit affidavits or other evidence showing, through specific facts, [the injury], but also that one or more of respondents' members would thereby by 'directly' affected apart from their 'special interest' in the subject.'" 504 U.S. 555, 563, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (quoting *Morton*, 405 U.S. at 735, 739, 92 S.Ct. 1361).[5] It follows that to survive a motion to dismiss based on lack of associational standing, the plaintiff must at least allege in its complaint that a specific member has suffered an injury.

■ The D.C. Circuit made it clear in a recent decision that a plaintiff organization must show that at least one member has standing to sue in his or her own right. In *Fund Democracy v. Securities and Exchange Commission*, an organization, Fund Democracy, objected to an SEC decision granting an exemption to an investment company from a certain provision

---

4. Likewise, even if a court ordered the defendant to contact all persons receiving services from WMATA's office since April 1, 2002, *see* Compl. at 18, this order again would not redress the plaintiff's injury because the plaintiff still is not eligible to vote in D.C., and, in any event, moved to Maryland in 1999. For this reason, there is no likelihood that an injunction against Alice Miller and the D.C.

Board of Elections will address plaintiff Tracy's injury.

5. Notably, the *Fund Democracy* court cited *Lujan*, a decision that followed the D.C. Circuit's decision in *Public Citizen*, for the proposition that an organization must present evidence that its members have an injury. 278 F.3d at 27.

under the Investment Company Act of 1990. 278 F.3d 21, 23–25 (C.A.D.C.2002). The court first held that Fund Democracy was not entitled to standing because it did not have any actual members or supporters that make it the functional equivalent of a membership organization. *Id.* at 26. The court further explained that, even assuming that Fund Democracy had members, the organization still cannot qualify for associational standing because it has "not sufficiently established that any of these individuals would have standing to sue in his own right." *Id.* Fund Democracy did not identify a single affiliate that invested or considered investing in the fund with the exemption. *Id.* at 27. Therefore, without evidence that any of its "members" had individual standing, the court explained, there can be no associational standing. *Id.* at 26–27.

The plaintiff, a Virginia-based branch of NCSD, has similarly failed to allege injuries to any one of its members. As discussed above, plaintiff Erika Tracy, does not have a redressable injury, and plaintiffs have failed to identify any other specific members with injuries, if there are any. To the extent that there are NCSD members who are eligible D.C. voters and who have injuries, NCSD should have had no problem demonstrating both. The NCSD, however, has failed to allege any such injury to one of its members who is eligible to vote in the District. Without more specificity regarding injuries to at least one such member of NCSD, the Court can only assume that the plaintiff is acting on behalf of its interest in facilitating voter registration for persons with disabilities. That interest alone, no matter how great the problem, is not enough to support associational standing. Therefore, the Court dismisses the case without prejudice against defendant Alice Miller.

### III. Order

Upon consideration of the plaintiffs' motion for a preliminary injunction, the opposition thereto, defendant Linda Lamone's motion to dismiss, and the record in this case, it is, this 30th of October 2002, hereby

**ORDERED** that defendant Linda Lamone's motion to dismiss [# 5] is GRANTED, and the defendant is dismissed without prejudice;

**FURTHER ORDERED** that the Court DENIES the plaintiffs' motion for a preliminary injunction[# 2];

**FURTHER ORDERED** that the defendant Alice Miller is dismissed without prejudice.

**SO ORDERED.**