Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

### FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued November 20, 2003    Decided March 2, 2004

No. 03-5114

GENERAL ELECTRIC COMPANY,
APPELLANT

v.

ENVIRONMENTAL PROTECTION AGENCY AND
MICHAEL O. LEAVITT, ADMINISTRATOR,
U.S. ENVIRONMENTAL PROTECTION AGENCY,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 00cv02855)

———

*Laurence H. Tribe* argued the cause for appellant. With him on the briefs were *Benjamin W. Heineman, Jr., Brackett B. Denniston III, Stephen D. Ramsey, Carter G. Phillips, Angus Macbeth, Thomas G. Echikson,* and *Brian T. Fitzpatrick.*

———

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

*Todd S. Kim*, Attorney, U.S. Department of Justice, argued the cause for appellees. With him on the brief were *Jeffrey Bossert Clark*, Deputy Assistant Attorney General, *Wendy L. Blake* and *John A. Bryson*, Attorneys, and *Alan Carpien*, Attorney, U.S. Environmental Protection Agency.

Before: GINSBURG, *Chief Judge*, and ROGERS and TATEL, *Circuit Judges*.

Opinion for the Court filed *PER CURIAM*.

*PER CURIAM*: The General Electric Company appeals the dismissal of its amended complaint alleging that the administrative orders regime of §§ 106, 107(c)(3), and 113(h) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9606, 9607(c)(3), and 9613(h), violates the Due Process Clause of the Fifth Amendment. The only issue on appeal is whether the district court erred in dismissing the amended complaint for lack of subject matter jurisdiction under § 113(h). We hold that the plain text of § 113(h) does not bar GE's facial constitutional challenge to CERCLA and accordingly, we reverse and remand the case to the district court.

## I.

Congress enacted CERCLA to address "environmental and health risks posed by industrial pollution." *United States v. Bestfoods*, 524 U.S. 51, 55 (1998). The statute grants the President and, by delegation, the Administrator of the Environmental Protection Agency ("EPA"), "broad power to command government agencies and private parties to clean up hazardous waste sites" by or at the expense of the parties responsible for the contamination. *Key Tronic Corp. v. United States*, 511 U.S. 809, 814 (1994). At issue is CERCLA's provision on the timing of judicial review. Section 113(h), 42 U.S.C. § 9613(h), provides, with five exceptions not relevant here, that:

> No federal court shall have jurisdiction under Federal law other than under section 1332 of Title 28 (relating to diversity of citizenship jurisdiction) or under State law

which is applicable or relevant and appropriate under section 9621 of this title (relating to cleanup standards) to review *any challenges to removal or remedial action selected* under section 9604 of this title, *or to review any order issued under section 9606(a)* of this title, in any action except one of the following [exceptions]. . . . (emphasis added).[1]

CERCLA § 104, the first section referenced in § 113(h), authorizes EPA, whenever any hazardous substance is released or is threatened to be released into the environment, to undertake two types of response actions: (1) to remove or arrange for the removal of the hazardous substance; and (2) to provide for remedial actions relating to the release or "substantial threat of release" of the substance. 42 U.S.C. § 9604. Removal actions are short-term remedies, designed to cleanup, monitor, assess, and evaluate the release or threatened release of hazardous substances. Remedial actions are longer-term, more permanent remedies to "minimize the release of hazardous substances so that they do not migrate to cause substantial danger to present or future public health or welfare or the environment." CERCLA § 101, 42 U.S.C. § 9601. EPA is authorized to select a particular response action and develop an administrative record without conducting an adjudicatory hearing. *Id.* § 113(k)(2)(c). Potentially responsible parties ("PRPs"), like GE, can participate in a notice and comment process and attend a public meeting in the affected area before EPA lists a particular site on the National Priorities List, develops an administrative record, and makes a final selection of the

---

[1] The five enumerated exceptions in § 113(h) are: (1) actions under CERCLA § 107 to recover response costs or damages or actions for contribution; (2) actions to enforce § 106(a) orders or to recover a penalty for violation of such orders; (3) actions for reimbursement under § 106(b)(2); (4) citizen suits under 42 U.S.C. § 9659 alleging that the removal or remedial action taken under CERCLA § 104 violated statutory requirements; and (5) actions under § 106 in which the United States has moved to compel a remedial action.

appropriate response action. *See id.* § 113(k)(2), 42 U.S.C. §§ 9613(k)(2), 9605(a)(8)(b).

CERCLA § 106(a), the second section referenced in § 113(h), involves EPA's authority to issue unilateral orders to PRPs. 42 U.S.C. § 9606(a). CERCLA provides a number of options for EPA to accomplish the clean-up work. First, EPA may perform the work itself and then file in the district court to recover its response costs from the PRP pursuant to CERCLA § 107. *See* CERCLA § 104, 42 U.S.C. § 9604(a); CERCLA § 107, 42 U.S.C. § 9607(a)(4)(A). Second, EPA may initiate settlement negotiations. *See* CERCLA § 122, 42 U.S.C. § 9622. Third, under § 106(a), EPA may issue unilateral administrative orders ("UAOs") after notice to the affected state, directing the responsible parties to clean up the hazardous sites "as may be necessary to protect public health and welfare and the environment." CERCLA § 106(a), 42 U.S.C. § 9606(a). Before issuing a UAO, EPA must determine "that there may be an imminent and substantial endangerment to the public health or welfare or the environment because of an actual or threatened release of a hazardous substance from a facility." *Id.* If a party fails to comply, EPA may file a civil action in the district court to enforce the UAO. *Id.* Under the UAO regime, a PRP may perform the required work and then petition EPA to recoup its costs; if EPA refuses to pay the PRP can sue the agency in the district court. *Id.* § 9606(b)(2)(A) & (B). Fourth, in the case of imminent threat or harm, EPA may file suit in the district court to compel the PRP to abate the danger or threat. *Id.*

CERCLA establishes various penalties, including punitive damages, in the event of noncompliance with a UAO by a PRP. Under § 106(b), the district court may, in the absence of "sufficient cause," impose daily fines of up to $27,500 for a willful violation, refusal, or failure to comply with a UAO. 42 U.S.C. § 9606(b)(1); 40 C.F.R. § 19.4. In addition, under § 107(c)(3), the court may impose punitive damages "in an amount at least equal to, and not more than three times, the amount of any costs incurred by the Fund as a result of such failure to take proper action." *Id.* § 9607(c)(3).

GE filed suit against the Administrator of EPA and EPA seeking a declaratory judgment that the provisions of CERCLA relating to the unilateral administrative orders regime, namely §§ 106(a), 107(c)(3), and 113(h), are unconstitutional under the Due Process Clause of the Fifth Amendment. GE alleged that the combination of the absence of pre-enforcement review and massive penalties for noncompliance with a UAO "imposes a classic and unconstitutional Hobson's choice: Either do nothing and risk severe punishment without meaningful recourse or comply and wait indefinitely before having any opportunity to be heard on the legality and rationality of the underlying order." Am. Compl. at ¶ 4. EPA moved to dismiss the amended complaint for lack of jurisdiction on the ground that § 113(h) postpones judicial review of any action under CERCLA until EPA seeks to enforce its remedial orders in court or the PRP sues to recoup its expenses for undertaking the clean-up. Alternatively, EPA moved for summary judgment on the grounds that there was no violation of due process, and that a facial attack on CERCLA would fail because there were circumstances in which the UAO regime could be applied in a constitutional manner. The district court dismissed GE's amended complaint for lack of subject matter jurisdiction under § 113(h), concluding that GE's facial constitutional claim was the type of pre-enforcement challenge that Congress intended to preclude. *General Electric Co. v. Whitman*, 257 F. Supp.2d 8, 31 (D.D.C. 2003).

## II.

This court's review of the order dismissing GE's amended complaint for lack of subject matter jurisdiction is *de novo*. *Stokes v. Cross,* 327 F.3d 1210, 1214 (D.C. Cir. 2003); *Sturm, Ruger & Co., Inc. v. Chao,* 300 F.3d 867, 871 (D.C. Cir. 2002); *Ryan v. Reno*, 168 F.3d 520, 521 (D.C. Cir. 1999). For the reasons that follow, we begin and end with the language of § 113(h), because when the statutory text is straightforward, there is no need to resort to legislative history. *See United States v. Gonzales*, 520 U.S. 1, 6 (1997); *Ratzlaf v. United*

*States,* 510 U.S. 135, 147–48 (1994); *Conn. Nat. Bank v. Germain,* 503 U.S. 249, 254 (1992).

The plain text of § 113(h) affords no indication that Congress intended to preclude all pre-enforcement review of constitutional challenges to the CERCLA statute. Section 113(h) divests federal courts of jurisdiction to entertain "any challenges to removal or remedial action selected under [§ 104 of CERCLA] or to review any order issued under [§ 106(a) of CERCLA]." 42 U.S.C. § 9613(h). Congress thus enumerated only two types of challenges over which federal courts lack jurisdiction—challenges to § 104 actions and § 106(a) orders. Although, § 113(h) refers broadly to "any challenges," the plain language does not bar "any challenge," without qualification. Instead, § 113(h) focuses on "any challenges" to removal or remedial actions under §§ 104 and 106(a), as well as "any enforcement activities related to" response actions. 42 U.S.C. § 9601(25)(defining removal and remedial actions to "include enforcement activities related thereto.").

GE's due process challenge to CERCLA's administrative orders regime is not a challenge to the way in which EPA is administering the statute in any particular removal or remedial action or order, but rather it is a challenge to the CERCLA statute itself. As such, GE's facial constitutional challenge does not fit within the plain text of § 113(h)'s reference to "any challenges to removal or remedial action selected under section 9604 of this title, or to review any order issued under section 9606(a) of this title." Although GE and EPA have ongoing interactions over remediation at several locations, *see General Electric*, 257 F. Supp. 2d at 24, GE's lawsuit does not challenge any particular action or order by EPA. The district court's conclusion that GE's facial constitutional challenge is barred by § 113(h) renders much of this provision surplusage: gone is the limitation to challenges to removal or remediation actions. *See Indep. Ins. Agents of Am., Inc. v. Hawke*, 211 F.3d 638, 645 (D.C. Cir. 2000).

We therefore agree with the plain text interpretation of the en banc court in *Reardon v. United States*, 947 F.2d 1509, 1515 (1st Cir. 1991), that § 113(h) does not bar pre-enforcement review of facial constitutional challenges to CERCLA. While "[a] constitutional challenge to EPA administration of the statute may be subject to [§ 113(h)]'s strictures," because GE's claim does not challenge a removal or remedial action selected under § 104 or an order issued pursuant to § 106(a), GE's amended complaint sets forth a "constitutional challenge to the CERCLA *statute* [that] is not covered by [§ 113(h)]." *Id.* *See also Employers Ins. of Wausau v. Browner*, 52 F.3d 656, 666 (7th Cir. 1995). EPA's effort to question the holdings of these cases is to no avail. Although it is true, as EPA suggests, that the First Circuit, in view of the particular circumstances of that case, *see Reardon*, 947 F.2d at 1515 n.1, applied the canon of statutory interpretation requiring Congress to speak clearly when it seeks to preclude judicial review of constitutional claims, *see id.* at 1514–15, we have no trouble agreeing with the *Reardon* court's plain language interpretation of § 113(h) here, *id.* at 1514, where we have no need to apply this interpretative canon ourselves. In addition, despite the district court's contrary conclusion, *Reardon*'s reasoning was not confined to CERCLA's lien provisions but turned on the distinction between challenges to EPA's administration of CERCLA, and challenges to CERCLA itself. *Id.* at 1515. And while, as EPA notes, the opinion in *Wausau* did not address the particular arguments raised here, the Seventh Circuit held that a due process challenge to CERCLA "is not precluded by those [§ 113(h)] limitations" because it was "a proper invocation of nonstatutory review." *Wausau*, 52 F.3d at 666.

Even if § 113(h) were ambiguous regarding constitutional challenges, our holding that GE's constitutional challenge is not barred by § 113(h) would comport with precedent distinguishing between facial, or "systemic," and as-applied, or particularized challenges. For example, in *Johnson v. Robison*, 415 U.S. 361, 373–74 (1974), a provision barring review of individual veterans benefit determinations did not bar a constitutional challenge to the statute itself. The Court distin-

guished "those decisions of law or fact that arise in the administration by the Veterans' Administration of a statute providing benefits for veterans" from constitutional challenges to "a decision of Congress." *Id.* at 367. This circuit, like others, has followed *Robison* and its progeny. *See, e.g., Lepre v. Dep't of Labor,* 275 F.3d 59, 67–68 (D.C. Cir. 2001); *Nat'l Coalition To Save Our Mall v. Norton,* 269 F.3d 1092, 1095 (D.C. Cir. 2001); *Mace v. Skinner,* 34 F.3d 854, 859 (9th Cir. 1994); *Disabled Am. Veterans United States Dep't of Veterans Affairs,* 962 F.2d 136, 141 (2d Cir. 1992); *Greenwood v. United States,* 858 F.2d 1056, 1059 (5th Cir. 1988); *Marozsan v. United States,* 852 F.2d 1469, 1474 (7th Cir. 1988)(en banc).

More recently, in *McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479 (1991), the agency had argued that a lawsuit challenging the manner in which the Special Agricultural Worker ("SAW") provision was being administered was barred as an application for adjustment of status. The Supreme Court disagreed. Looking to "[t]he critical words" of the immigration statute that barred review "of a *determination* respecting *an application*" for SAW status, the Court observed that the words referred only to review of "a single act rather than a group of decisions or a practice or procedure employed in making decisions." *Id.* at 492. This made clear, the Court concluded, that Congress was referring to denials of individual applications for SAW status, not "general collateral challenges to unconstitutional practices and policies used by the agency in processing applications." *Id.* As is no less true for CERCLA, the Court in *McNary* stated, "had Congress intended the limited review provisions of § 210(e) of the [immigration statute] to encompass [systemic, collateral] challenges to [agency] procedures and practices, it could easily have used broader statutory language," referencing other statutes barring judicial review of "all causes" and of "all questions of law and fact." *Id.* at 494.

Even though these decisions, which involved statutes precluding judicial review altogether, applied an interpretive canon that we need not apply here, *see McNary,* 498 U.S. at 496–99; *Robison,* 415 U.S. at 366–67, the distinction they

draw between systemic and particularized challenges nevertheless supports our interpretation of the plain text of CERCLA § 113(h).

To the extent that other courts have concluded a constitutional claim is barred by § 113(h), they have done so in cases involving challenges to specific EPA orders and actions, *see Oil Chem. & Atomic Workers Int'l Union v. Richardson,* 214 F.3d 1379 (D.C. Cir. 2000); *McClellan Ecological Seepage Situation v. Perry*, 47 F.3d 325, 327 (9th Cir. 1995); *Schalk v. Reilly*, 900 F.2d 1091, 1094 (7th Cir. 1990); *Voluntary Purchasing Groups, Inc. v. Reilly,* 889 F.2d 1380, 1390 (5th Cir. 1989), or they have not focused on the plain text of § 113(h), *see Barmet Aluminum Corp. v. Reilly*, 927 F.2d 289, 293 (6th Cir. 1991); *Schalk*, 900 F.2d at 1094; *South Macomb Disposal Auth. v. EPA*, 681 F. Supp. 1244, 1251 (E.D. Mich. 1988). EPA's reliance on *Shalala v. Illinois Council on Long Term Care*, 529 U.S. 1 (2000), is similarly unhelpful to its position. First, the text of the statute in that case was much broader in scope, prohibiting direct judicial review of any action "to recover on any claim arising under" the Medicare Act. *See id.* at 6. Second, because the text of the provision at issue, "if read alone, [was] uncertain," *id.* at 10, the Court relied upon congressional purpose and its own precedents interpreting the Medicare Act in concluding the Act barred review of claims that certain regulations violated the Due Process Clause. *Id.* at 10–15. Thus, *Illinois Council* is simply inapposite.

The plain language of section § 113(h) bars pre-enforcement review of agency actions only under §§ 104 and 106(a) of CERCLA. And while EPA would have the court distinguish *McNary* on the ground that, unlike CERCLA § 113(h), which merely postpones judicial review, the immigration statute barred all judicial review of application denials and particular agency actions, the Court's reasoning in *McNary* was based on an interpretation of the plain text of the statute; EPA has pointed to no principle that would make the distinction between facial and as-applied constitutional challenges any less relevant to a statute barring pre-

enforcement review of certain agency actions than to a statute precluding all judicial review.

For EPA to prevail, then, in contending that Congress intended to preclude pre-enforcement constitutional challenges to the CERCLA statute, in contravention of the plain text of § 113(h), it "must show either that, as a matter of historical fact, Congress did not mean what it appears to have said, or that, as a matter of logic and statutory structure, it almost surely could not have meant it." *Engine Mfrs. Ass'n v. EPA,* 88 F.3d 1075, 1089 (D.C. Cir. 1996). *See also Appalachian Power Co. v. EPA,* 249 F.3d 1032, 1041 (D.C. Cir. 2001). EPA fails to meet this burden. EPA propounds a "functional" interpretation, maintaining that, in light of the congressional purposes underlying § 113(h), the applicability of § 113(h) "turns not on the formal nature of the suit, but on the functional question whether the suit would interfere with a response action–or, as here, *many* response actions." Appellees' Brief at 19. For support, EPA culls CERCLA's legislative history and points to a floor statement by a single senator that § 113(h) covers "all lawsuits, under any authority, concerning the response actions that are performed by EPA." 132 Cong. Rec. 28,441 (1986). This statement contrasts with the House, Senate and Conference Reports, *see* H.R. Rep. No. 99–253(V), at 25–26 (1985); S. Rep. No. 99–11 at 58 (1985); H.R. Conf. Rep. No. 99–962, at 224 (1986), which refer to legal challenges to the selection and implementation of particular response actions, and thus the senator's statement is hardly persuasive evidence of congressional intent. *See Garcia v. United States*, 469 U.S. 70, 76 (1984); *United States v. Ray*, 21 F.3d 1134, 1138 (D.C. Cir. 1994). In any event, the EPA's functional approach ignores the plain language of § 113(h), which limits the bar to any challenges to removal or remedial actions under § 104 or any orders under § 106(a), not to facial constitutional challenges to the CERCLA statute itself.

Finally, our interpretation of § 113(h) "does not necessarily run counter to the purposes" underlying that provision. *Reardon,* 947 F.2d at 1515. The concern expressed by the district court, and echoed by EPA on appeal, was that, if

successful, GE's constitutional challenge would have the effect of hindering or delaying EPA's cleanup of hazardous waste sites, undermining Congress' goals in enacting section 113(h). *General Electric*, 257 F. Supp. 2d at 23. Or, as EPA contends, GE's pre-enforcement constitutional challenge is within the scope of § 113(h) because a challenge to the CERCLA statute is inherently a challenge to a response action when the relief sought would have the effect of interfering with EPA's ability to issue orders and enforce clean-up operations. These concerns cannot be lightly dismissed given the nature of the hazards to health and the environment addressed by CERCLA, and Congress' overriding goal of preventing delays in the cleanup of hazardous waste sites. However, the adjudication of a pre-enforcement constitutional challenge to CERCLA's UAO regime will not necessarily frustrate Congress' intent and, therefore, reliance on congressional purpose cannot overcome our interpretation of the plain text of the statute. A decision on GE's due process claim that is favorable to GE would afford EPA an opportunity to provide due process review at an early stage. A decision rejecting GE's due process claim would remove a later impediment to EPA's enforcement action. In addition, as the First Circuit observed, the usual practical considerations counseling against pre-enforcement review are not present in the adjudication of a facial due process claim; it is a purely legal issue whose resolution does not depend on the type of information available only after site clean-up is completed, and does not have the potential of producing inconsistent programmatic results. *See Reardon*, 947 F.2d at 1515.

Because Congress's meaning as reflected in the plain text of § 113(h) is compatible with the structure of CERCLA's administrative order regime, our inquiry is at an end, *see Gonzalez*, 520 U.S. at 6, and we need not resort to the doctrine of constitutional avoidance to support our interpretation of the text. *See Dep't of Hous. & Urban Dev. v. Rucker*, 535 U.S. 125, 134–35 (2002); *United States v. Oakland Cannabis Buyers' Co-op.*, 532 U.S. 483, 484 (2001). Accordingly, we hold, in light of the qualified scope of the judicial review bar in § 113(h), that the district court erred in dismissing

GE's amended complaint for lack of subject matter jurisdiction, and we remand the case to the district court to address the merits of GE's facial due process claim.